Shepherd *v.* State.

4687                                          252 S. W. 2d 621

Opinion delivered November 17, 1952.

192

*Lookadoo & Lookadoo* and *McMillan & McMillan,* for appellant.

*Ike Murry,* Attorney General and *George E. Lusk, Jr.,* Assistant Attorney General, for appellee.

HOLT, J. Appellant, J. R. Shepherd, was tried in Hempstead County and found guilty by a jury on a charge of having violated the Overdraft Statute (§§ 67-714-15-16, Ark. Stats. 1947), and his punishment fixed at a term of one year in the penitentiary. From the judgment is this appeal.

Numerous assignments of alleged errors are presented by appellant, but not all are argued. Since we have concluded that the judgment must be reversed and remanded for error of the trial court in denying appellant the right to introduce certain testimony in rebuttal hereinafter considered, we shall examine only one of the other assignments in which he strenuously challenges the sufficiency of the evidence to support the verdict.

The information charged that with felonious intent to defraud, Shepherd drew a certain $2,100 check, dated July 27, 1950, on the Citizens National Bank of Arkadelphia, which check was turned down by the Bank when presented for payment for the reason that said appellant did not have sufficient funds, credits or monies on deposit in said bank to cover payment of said check and that appellant has since neglected and refused to make said check good, notwithstanding more than ten days notice of nonpayment had been given to him.

There was evidence that appellant was operating an automobile sales business of new and used cars, wholesale and retail, on a large scale, in Arkadelphia, Clark County. He wrote a check in Arkadelphia on a bank in Clark County for $2,100, payable to the "Trading Post" in Hope, Hempstead County, in payment for a Ford automobile which he had bought (over the telephone) through Verdis Moses, agent for the "Trading Post." The check was dated July 27, 1950, and there was evidence that it was delivered to the "Trading Post," the seller in Hope, by appellant's agent in the afternoon of the 27th and the following morning deposited in the First National Bank of Hope. A few days later this check was returned unpaid for insufficient funds and although appellant was notified and demand for payment made on him several times, after he had been given notice, the check was not paid within the ten days notice and has, in fact, never been paid. Appellant's defense was that when the check in question was issued, he had on deposit sufficient funds to cover it, that he had no intent to defraud, that "the State's *prima facie* case was completely overcome," and introduced evidence which tended to sustain his contention. The evidence presented by the State tended to contradict that of appellant.

We do not attempt to detail the testimony here. It suffices to say that there was substantial evidence introduced by the State to sustain the charge against appellant and to make a case for the jury.

We come now to consideration of the error indicated above.

Appellant contended that the venue was in Clark, his home county, and not in Hempstead County, where he was charged and tried. It appears undisputed that the check in question was executed in Arkadelphia, but there is conflict in the testimony as to whether it was delivered in Clark or Hempstead County. If delivered in Clark County, as appellant contended, then the venue would be in Clark, and not Hempstead.

The Court instructed the jury: "First, he (appellant) says that the check was written and delivered in Clark County, Arkansas. In that connection you are told that if you believe from the evidence in this case that said check was written and delivered in Clark County, Arkansas, you will find him not guilty."

On this point, the record reflects that the State had subpoenaed, on its behalf, witnesses, Grady Pate, an employee of appellant in Arkadelphia, and Verdis Moses, an employe of the "Trading Post" in Hope, and both were present at the trial. Pate was not called by the State, but the State did call Moses who, on his direct examination, testified: "Do you know who brought the check down here? A. It was the driver of the car brought the check down. Q. Do you know his name? A. No, sir, but he is in the—back here (indicating)—heavy set guy. I don't know what his name was. Q. He brought you that check there? A. Yes, he did." On cross-examination, he testified that he sold the car over the telephone to appellant who was in Arkadelphia at the time and that the car "was picked up about five or six o'clock in the afternoon. Q. By his driver. A. Yes, sir. Q. Do you know who the driver was? A. No, sir. Q. You say he was a large heavy set fellow? A. Yes, sir. Q. About your size? A. Yes, or a little bit heavier. Q. Could you call his name for the jury? A. I don't know his name. Q. Did you say it was Grady Pate? A. Grady Pate came down and he went back and the drivers went on with the car." (At this point, the court, upon appellant's request, permitted a witness to be brought from the witness room for identification). "Q. Is this the young man that got the car? Yes, sir, he is the man that picked the car up. By Mr. McMillan: Let the record show that the young man's name is Carl Manning—your name is Carl Manning? By the witness: Yes, sir."

We think it clear that the effect of the above testimony was that Moses claimed he received the check in question from the driver of the car, who was identified as Carl Manning.

Following the testimony of Moses, the State, after presenting witness, J. H. James, rested.

The appellant, on his own behalf, then offered Carl Manning, who testified: "Q. Mr. Manning, did you bring the check or did you deliver the check to the Trading Post or any one connected with it that day? A. No, sir, I didn't." Following Manning's testimony, A. O. Shepherd, appellant's brother, testified that Moses "came to Arkadelphia and got the check" in question.

The State then, in rebuttal, recalled Moses, put him back on the stand, and he then testified for the first time that: "Did you testify this morning that the check was brought to you by the driver? A. No, sir, it was brought to me by Grady Pate." Up to this point, Pate had not been called by either party and had not testified. Appellant then called Pate and in an effort to rebut this statement of Moses (made for the first time by him in rebuttal) that it was Pate and not Manning who actually delivered the check in Hope, asked Pate the following question: "Q. It has been testified here by Mr. Moses that a Ford car was purchased by him,—by Roland Shepherd over the telephone on the 27th day of July, 1950, and that a check was issued by Roland Shepherd and that you, in company with Carl Manning, brought the check down to The Trading Post; I believe they call it, here at Hope, and delivered it to Mr. Moses; tell the jury whether or not you brought that check down there?" Upon objection by the State, Pate was not permitted to answer the question. Had he been allowed to answer, his answer would have been: "I did not." Proper exceptions to the court's ruling were preserved by appellant.

In the circumstances, we hold that the Court erred in refusing to allow Pate to answer the question. Having permitted the State to, in effect, reopen its case in chief by requesting Moses to clarify or change a statement made by him in his testimony in chief, on a vital issue, it was highly prejudicial to appellant's rights to deny him the right to rebut or contradict this very damaging

testimony of Moses, the man who made the deal with appellant for the purchase of the car. While it is true that in such circumstances, the trial court must be, and is allowed discretion in admitting testimony after the State has rested, such discretion must always be exercised in such a manner as would not "prejudice the defendant through surprise or otherwise at a time when the disadvantage could not be overcome," *Anglin* v. *State,* 215 Ark. 49, 219 S. W. 2d 421.

We think it obvious that the State was given an advantage by first admitting the rebuttal testimony of Moses and then at the same time refusing appellant the opportunity to overcome this advantage, by the rebuttal testimony of Pate, above, and that appellant's rights have been prejudiced.

For the error indicated, the judgment is reversed and the cause remanded.

Justice McFADDIN not participating.