Joy D. ROCHESTER *v.* STATE OF ARKANSAS

5587                                                    467 S. W. 2d 182

Opinion delivered May 24, 1971

*Lohnos T. Tiner,* for appellant.

*Ray Thornton,* Attorney General; *Garner L. Taylor, Jr.,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Joy D. Rochester, appellant herein, was convicted of Negligent Homicide and the jury imposed a fine of $1,000 as punishment. From the judgment entered in accordance with the jury verdict, appellant brings this appeal. The proof on the part of the state reflects that Officers Brown and Comstock of the Marked Tree City Police Department, observed appellant on the evening of October 10, 1969, driving a blue Cadillac automobile, the car hitting a divider, and then running a stop sign. The officers followed appellant, who was traveling west, and turned on the emergency light. The car was clocked at 95 miles per hour and, as it went into a curve "went off the highway and seemed to have went into the air; flipped over". Upon arriving at the scene, appellant was found lying on the back seat unconscious and Vickie Jones, 18 years of age, who was riding in the front seat with appellant and Ray Dean Atchley, was found under the automobile. She was unconscious, but not dead, and an

ambulance was called. This testimony was given by Officer Brown and it was stipulated that Officer Comstock, if called to testify, would testify substantially the same as Brown.

Ray Dean Atchley, 18 years of age, testified that he was with appellant and Vickie Jones at the Riverside Tavern prior to the wreck, for about twenty minutes, and that appellant was intoxicated. He observed the blue light on the police car behind the Rochester automobile and told appellant that she had better stop the car. But she replied that "she was going to outrun them". He also testified that the automobile was traveling at 95 miles per hour just prior to the accident. Atchley received a cut on his leg. He further stated that he attended the funeral for Vickie.

Dorothy Jones, mother of Vickie, testified that she last saw her daughter alive on October 10, 1969, at about 6 p.m. "The first time I saw her after the accident, after she was dead, she was already dressed and ready. You couldn't tell how badly hurt she was."

Lowell Lewis, Trooper with the Arkansas State Police, testified that he received a call concerning the accident and went to the scene, observed Vickie Jones on a stretcher, stating that she was still alive, but was removed a short time after his arrival. The state rested and appellant moved for a directed verdict for the reason that the state had failed to prove the *corpus delicti, i. e.,* it had not been established that death resulted from injuries sustained in the accident. The court denied the motion and stated that it would reopen the case for the purpose of going into that particular matter further, if the state' desired. After objections and exceptions by appellant, Mrs. Jones was recalled, at which time she reiterated her testimony about last seeing her daughter alive at 6 p.m. o'clock on October 10, 1969, and added that the daughter was in good health and was not injured in any manner. Officer Comstock then testified that, upon arriving at the scene, he found Vickie Jones under the car; that part of her body from the chest down was extending out beyond the car. He, Brown,

and Atchley, then removed her from under the automobile and Comstock, when questioned as to her condition, replied "Well, all I could see, a lot of blood coming out of her mouth. She was just laying there and this blood running out of her mouth". He said that it was fresh blood, and that there was a "gurgling" sound from her mouth. Comstock stated that the ambulance took her away. The state then again rested, and the appellant again moved for a directed verdict for the same reason as mentioned originally, said motion being denied. No evidence at all was offered by appellant.

It is asserted that the court erred in permitting the state to reopen its case after the state had rested. We do not agree. In the first place Ark. Stat. Ann. § 43-2114 (Repl. 1964) provides that the court for good reason, in furtherance of justice, may permit the parties (after having rested) to offer evidence upon the original case. We have likewise so held numerous times, stating that it is within the trial court's sound discretion and furtherance of justice, to permit the state to present witnesses after resting, where the circumstances are such as not to prejudice defendant through surprise or otherwise when the disadvantage cannot be overcome. *Wimberly* v. *State,* 240 Ark. 345, 399 S. W. 2d 274, and *Shepherd* v. *State,* 221 Ark. 191, 252 S. W. 2d 621. Certainly, there was here no surprise that could have resulted in prejudice.

It is next asserted that the motion for directed verdict following the additional testimony should have been granted because the state still had not proved the *corpus delicti*. Again, we disagree. In *Edmonds* v. *State,* 34 Ark. 720 (1879), the requisites for proving *corpus delicti* in a homicide case were set out by Chief Justice English. To establish same, the fact of death must first be shown, second, the identification of the body, or remains, as those of the person said to have been killed, and finally, the criminal agency of another, as the cause of the death. As to the last, the opinion states:

"A dead body, or its remains, having been dis-covered and identified as that of the person charged to have been slain and the basis, of a *corpus delicti* being thus fully established, the next step in the process, and the one which serves to complete the proof of that in-dispensable preliminary fact is, to show that the death has been occasioned by the criminal act or agency of another person. This may always be done by circum-stantial evidence, including that of the presumptive kind; and for this purpose a much wider range of inquiry is allowed than in regard to the fundamental fact of death, and all the circumstances of the case, including facts of conduct on the part of the accused, may be taken into consideration."

In *Outler* v. *State,* 154 Ark. 598, 243 S. W. 851, Buck Outler was convicted of the crime of Murder in the First Degree, it being charged that he had murdered Will Blackburn by striking Blackburn with a gun. The proof reflected that Outler struck Blackburn a violent blow across the head with a gun, knocking the latter down. A number of people witnessed what happened thereafter, the opinion reflecting the following:

"Blackburn walked into the room with blood stream-ing down from his head and face, and was engaged in wiping his face with a cloth. The testimony tends to show that it was not thought, either by Blackburn him-self or those present, that Blackburn was seriously hurt, at least there is no testimony directly on this subject, some of the witnesses merely stating that Blackburn was wiping blood from his face and seemed to be con-scious. None of the witnesses detailed the circumstances under which Blackburn left the house, or what occurred after that time, but it was proved that Blackburn went home and died early the next morning."

We then stated:

"It is earnestly contended that the evidence is in-sufficient to warrant the conviction, for the reason that it was not proved that death resulted from the blow de-livered by appellant. There is nothing, however, in the

record to show that there was any other cause for the death which resulted so soon after the infliction of the blow, and the jury were authorized, we think, in drawing the inference, even in the absence of direct proof on the subject, that death resulted from the blow."

It is at once apparent that there is a good deal more evidence to establish the *corpus delicti* in the present case than in *Outler.* Here, Miss Jones was observed pinned under a Cadillac automobile which had been traveling at 95 miles per hour at the time of the crash; she was unconscious; blood was coming from her mouth, together with "gurgling" sounds. The ambulance came and took her away, (rather than her leaving the scene of her own volition, as did Blackburn). Here was a woman, who from appearances, was evidently, at least, critically injured (unlike *Outler,* where it was not thought by those present that Blackburn was seriously hurt). The language used by this court in rejecting Outler's contention is entirely *apropos* here, *viz,* "There is nothing, however, in the record to show that there was any other cause for the death which resulted so soon after the infliction of the blow [injury] and the jury were authorized, we think, in drawing the inference, even in the absence of direct proof on the subject, that death resulted from the blow [injury]". It will be remembered that Mrs. Jones testified that her daughter was in good health and had no injuries just a short time prior to her death.

Appellant asserts that error was committed in permitting Officer Comstock· to testify since it had already been stipulated that Comstock, if called, would testify substantially the same as Officer Brown, but that when called, Comstock did not testify the same. We find no merit in this argument. A stipulation that the testimony would be substantially the same certainly does not mean word for word; such a stipulation really means that there will be no conflict in the testimony between those who have testified and those whose testimony is stipulated to be the same. Here, there was no conflict. The evidence complained of was simply *additional* facts not covered in the examination of Officer Brown. Appellant

says that this could have meant to the jury that Officer Brown would have testified to these facts, and appellant had no opportunity to again cross-examine Brown. We do not agree with the basis of the objection since it is certainly reasonable to assume that after both witnesses testified, the jury would consider their testimony separately, and as to having no further opportunity to cross-examine Brown, there is nothing in the record to indicate that any effort was made to get Officer Brown back on the stand, or that he would have been unavailable for further examination. More noticeable than that is the fact that counsel did not cross-examine either Comstock or Brown when they were on the stand.

It is also asserted that it was error for the court to permit Mrs. Jones, the mother of the deceased, to take the stand the second time for the reason that the rule had been asked and the witness advised the court, prior to testifying, that she had been present in court and had heard the testimony of other witnesses, "The appellant had no way of knowing how much of the testimony this witness had heard and was therefore unable to effectively cross-examine her".[1] We are unable to see how permitting Mrs. Jones to take the stand the second time resulted in prejudice to the defendant. Actually, her testimony was almost identical to that given the first time; she only added that her daughter was in good health and not suffering from any injury when she left home on the evening of the accident. Of course, this last was not information which Mrs. Jones would have acquired from witnesses who had already testified.

No prejudicial error being shown, and it appearing that appellant received a fair trial, the judgment is affirmed.

It is so ordered.

BYRD, J., dissents.

FOGLEMAN, J., not participating.

---

[1] Defense counsel did not cross-examine Mrs. Jones at all on either occasion when she was on the witness stand.

CONLEY BYRD, Justice, dissenting. Arkansas Stat. Ann. § 75-1001 (Repl. 1957) provides:

"(a)   When the death of any person ensues within one [1] year as a proximate result of injury received by the driving of any vehicle in reckless or wanton disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide. . . ."

Proximate cause is defined as a cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred. A. M. I. (civil) 501.

If someone in the future should assert that Vicki Jones died from drowning when the ambulance in which she was riding was blown into Black Fish Lake, not one member of the majority can point to the record before us and say that there was evidence before the jury from which it could find to the contrary. The fact that jurors may have been permitted in the past to speculate as to the cause of death does not seem to me to be a sufficient license to perpetuate such speculation. Even the Outler case, 154 Ark. 598, upon which the majority relies contained more proof of proximate cause than that shown in the case at bar. In the Outler case the proof showed the injury sufficient to cause a brain concussion, the fact that the deceased walked home and went to bed without other apparent injury and that the deceased was found dead in his bed the next morning after the attack upon him sometime between dark and the breakup of the party at which the attack occurred. Here the proof shows nothing as to what happened to Vicki Jones from the time she was put in the ambulance until she was seen by her mother at the morgue in West Memphis sometime the next day.

For the reasons herein stated, I dissent as to the affirmance.