Daniel MERCER *v.* STATE of Arkansas

CR 74-46                                   510 S.W. 2d 539

Opinion delivered June 24, 1974

*Donald Goodner,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Dep. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Appellant Daniel Mercer was charged with involuntary manslaughter allegedly arising from the operation of his vehicle in a willful and wanton

manner. To reverse his conviction upon a jury verdict, he relies upon the following points:

"I. The court erred in refusing to dismiss the case and in allowing the matter to be submitted to the jury.

II. The court erred in refusing the defendant's requested instruction as to acts committed by misfortune or accident.

III. The court erred in overruling the appellant's motion to suppress evidence of the chemical test of the appellant's blood."

POINT I. To sustain the action of the trial court in submitting the case to the jury the State makes the following argument:

"The testimony adduced at the trial, when viewed most favorably to appellee, reveals a 1965 Pontiac being driven by appellant was north bound on U.S. Highway No. 71. At a point approximately eight miles north of Waldron, Arkansas, appellant's vehicle crossed a well-marked center line and sideswiped the left rear wheel of a trailer towed by a tractor driven by Marcus Eoff; a tire was blown and the light lens was torn off the trailer, throwing up a cloud of smoke and dirt. Appellant's car continued around a curve and collided head-on with a vehicle driven by Bert Berkshire. The second collision occurred entirely in the Berkshire lane of traffic. Berkshire was killed by the impact and appellant Mercer suffered multiple injuries. Several beer bottles were found broken in the interior of the Mercer vehicle; a chemical test revealed Mercer was under the influence of alcohol at the time of the accident."

We cannot find in the record any evidence to sustain the State's contention that appellant "crossed a well-marked center line" before he sideswiped the trailer driven by Marcus Eoff. Trooper Ira Green described the scene of the collision as occurring ". . . nine miles North of Waldron, Highway 71, at the area of the accident, the road runs generally east

and west and there was a curve to the North. . . ." The truck driver Mr. Eoff testified that he had appellant's vehicle in view a hundred yards or so before the collision with his truck. During that time he was not exactly watching appellant's vehicle but was watching the road. His direct testimony is as follows:

"Q. Alright, now did anything happen there as you met him?

A. Well, he just side-swiped the back of my trailer, blowed out a tire and knocked the light lens off of my trailer, but he didn't scratch the trailer.

. . .

Q. Well, the fellow that got killed, he was following you?

A. Yes, sir.

. . .

Q. Now did the accident occur there between Mr. Berkshire and—the man that was following you and the man that sideswiped you, the defendant Mercer?

A. Yes, sir.

Q. Was there a head-on collision?

A. Yes, sir.

Q. Was the defendant over on the wrong side of the lane of traffic?

A. Well, all I could see whenever he side-swiped me, was smoke and dirt. You see, I was around the curve, I had just straightened out on the curve and he hit the other fellow as the other fellow was coming into the curve from the north side. There was so much fog and dust and smoke there, I didn't know that he had hit the other car till I had got back about half way down there."

The statute under which appellant was charged provides:

"If the killing be in the commission of an unlawful act, without malice, and without the means calculated to produce death, or in the prosecution of a lawful act, done without caution and circumspection, it shall be manslaughter. Provided further that when the death of any person ensues within one [1] year as a proximate result of injury received by the driving of any vehicle in reckless, willful or wanton disregard of the safety of others, the person so operating such vehicle shall be deemed guilty of involuntary manslaughter."

We are unable to find in the record any proof to show that the proximate cause of the head-on collision with decedent's vehicle resulted from appellant's driving of his vehicle in reckless, willful or wanton disregard of the safety of others. There is no proof as to the lane of travel in which the collision with the trailer occurred. Since a conviction cannot be sustained upon speculation and conjecture, *Ayers v. State,* 247 Ark. 174, 444 S.W. 2d 695 (1969), it follows that the trial court erred in overruling appellant's motion for a directed verdict.

POINT II. Since the alleged error in refusing to give appellant's requested instruction upon misfortune or accident will not necessarily arise upon the same evidence on a new trial, we need not reach that issue on this appeal.

POINT III. The record shows that the investigating officer at the scene of the collision requested that blood be drawn from appellant and an alcohol test run. The record also shows that appellant was taken to the hospital immediately after the accident where he spent several weeks recuperating from the injuries he received in the collision. The blood sample taken showed an alcoholic content of .15% of one percent.

To suppress this evidence appellant makes two contentions. The first is that it amounts to an unlawful search and seizure. Our legislature recognizes that one who drives an automobile on the highways of this state gives an implied

consent to the taking of such tests, Ark. Stat. Ann. § 75-1045 (Repl. 1957). A number of other states have similar laws. The validity of such laws was upheld in *Schmerber* v. *California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). Consequently, we find no merit in the contention.

Appellant's next contention is that the evidence should be suppressed because he was not arrested before the sample was taken as required by Ark. Stat. Ann. § 75-1045 (Repl. 1957). We find no merit in this contention. The record clearly shows that the officer saw enough at the scene of the collision to warrant an immediate arrest of appellant for driving while intoxicated. Since appellant admits that his condition at the time was such as to require hospitalization and that he remained therein for several weeks, it would appear that because of the officer's benevolence, he should be estopped from asserting that an arrest was a prerequisite to the taking of the blood sample. Furthermore, it would be absurd and ridiculous to hold that an officer would have to be so inhumane as to invariably arrest a person teetering on the brink between life and death before his blood alcohol content would be admissible in evidence. On the whole record, we cannot say that the trial court erred in not suppressing the evidence.

Reversed and remanded for new trial.