James Earl PHILLIPS *v.* STATE of Arkansas

CA CR 82-116                                    644 S.W.2d 288

Court of Appeals of Arkansas
Opinion delivered December 1, 1982

*Coleman, Gantt, Ramsay & Cox,* by: *John D. Davis,* for appellant.

*Steve Clark,* Atty. Gen., by: *Matthew Wood Fleming,* Asst. Atty. Gen., for appellee.

GEORGE K. CRACRAFT, Judge. James Earl Phillips appeals from his conviction by jury of the crime of negligent homicide as defined in Ark. Stat. Ann. § 41-1505 and § 41-203 (Repl. 1977). His punishment was assessed at six months in the county jail and a fine of $250. The sole issue on appeal is the sufficiency of the evidence to sustain the verdict. It is a well settled rule that the evidence adduced at the trial is reviewed on appeal in the light most favorable to the appellee and the judgment must be affirmed if there is any substantial evidence to support the findings of the trier of fact. *Fountain* v. *State,* 273 Ark. 457, 620 S.W.2d 936 (1981) and *Cooper* v. *State,* 275 Ark. 207, 628 S.W.2d 324 (1982). Substantial evidence is that which is of sufficient force and character that it will with reasonable and material certainty and precision compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture. *Jones* v. *State,* 269 Ark. 119, 598 S.W.2d 748 (1980).

Under Ark. Stat. Ann. § 41-1505 (Repl. 1977) a person commits negligent homicide if he "negligently" causes the

death of another person. Ark. Stat. Ann. § 41-203 (Repl. 1977) declares:

> A person acts negligently with respect to attendant circumstances or a result of his conduct when he should be aware of a substantial and unjustifiable risk that the circumstances exist or result will occur. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

In the commentary to this section it is noted that negligent conduct is distinguished from reckess conduct primarily in that it does not involve the conscious disregard of a perceived risk. In order to be held to have acted negligently under this section it is not necessary that the actor be fully aware of a perceived risk and recklessly disregard it. It requires only a finding that under the circumstances he *should* have been aware of it and his failure to perceive it was a *"gross deviation"* from the care a reasonably prudent person would exercise under those circumstances. The section itself declares that the degree of negligence sufficient to establish civil liability will not suffice for the purpose of this section. The question is not whether he acted the same as a reasonably prudent person would have under the same circumstances, but whether his action was a gross deviation from that standard. In earlier cases involving negligent homicide statutes with similar wording, it was stated that in order for the negligence to be criminal it must be shown that a homicide was not improbable under the facts existing at the time which should reasonably have an influence and effect on the conduct of the person charged. *Phillips* v. *State*, 204 Ark. 205, 161 S.W.2d 747 (1942). When the facts disclosed by this record are reviewed in the light most favorable to the State we cannot say that the finding of the jury was not sufficiently supported.

On November 14, 1980 Diana Synco was shot and mortally wounded while hunting with her husband, Richard

Synco, in a wooded area in Jefferson County. James Earl Phillips admitted firing the fatal shot but contended that he believed he was shooting at a deer. On the day of the tragedy the Syncos had left their home in Stuttgart before daylight and had driven to the Bayou Meto Wildlife Management Area in Jefferson County. This area had been opened for a deer hunt restricted to the taking of buck deer. Upon arrival at the Wildlife Management Area they met friends, parked their vehicle and rode into the area in their friends' truck. When they arrived at the place they intended to hunt they parked the truck and Synco and his wife walked across a bean field toward a wooded area, their friends having gone in a different direction. After crossing the field the Syncos walked along the edge of the woods on a trail or roadway.

The appellant, also hunting deer, had arrived in the vicinity at about the same time and was walking along the edge of the woods toward the Syncos about 100 yards distant from them when the event occurred. All witnesses agreed that dawn was just breaking. It was dark, foggy and drizzling rain; visibility was very poor. According to Richard Synco he first observed a "silhouette in the fog down the road" about 100 yards from where he and his wife were walking. The Syncos decided that it was possibly another hunter and that they should get in the woods. They started toward the woods but before they got there they heard a shot. Synco grabbed his wife and rushed her into the buck-brush thicket where they could no longer see the "silhouette." While they were standing there a second shot was fired, mortally wounding Mrs. Synco. Synco then fired a warning shot and shouted for help. According to Mr. Synco, at all times both he and his wife were wearing orange hunting vests as outside garments.

The appellant testified that while standing on the edge of the field he observed a movement of a white patch and dark patch next to it which resembled a buck and a doe brousing at the edge of the field. He saw no "hunting orange" or other hunter and felt sure that what he saw was a pair of deer. He admitted that he saw no horns or large ears

and did not ascertain whether the objects were four-footed or otherwise. He then fired at the darker object. As they darted into the woods he fired a second shot before he heard a warning shot and someone shouted that someone had been hurt. He then went to the scene and offered assistance. He was sent to locate the other hunters and request that the truck be brought to Mrs. Synco. After identifying himself he then ran to his mother's house which was located in that area and called the sheriff's office reporting the incident. He called the hospital at DeWitt informing them that a bullet wound victim was en route.

The investigating officer determined that the shot was fired from a distance of about 75 to 80 feet. He stated that due to the shape of the woods the Syncos had a better view of Phillips than he had of the victim. From where the appellant stood when he fired the victim would have "blended more into the woods."

While deer hunting is a popular sport enjoyed by many, it can under some circumstances be hazardous. It involves the use of powerful weapons that propel lethal loads great distances in areas where the landscape, in many instances, makes visibility poor and identification of a target difficult. When a hunter fires his gun in an area where he knows others might be there clearly exists a substantial risk of harm. The hunter in these circumstances must exercise great care in identifying his target. It has been said that if in doubt, you must not shoot. *State* v. *Green*, 38 Wash.2d 240, 229 P.2d 318 (1951) and Annot., 23 A.L.R.2d 1397; *State* v. *Newberg*, 129 Or. 564, 278 P. 568 (1929) and Annot., 63 A.L.R. 1225. Appellant's testimony tended to prove that he had exercised the requisite care. It was for the jury to determine the weight to be given this testimony.

In the case at bar the conditions in which the appellant found himself called for an exercise of extreme care. All agreed that visibility was extremely limited; his ability to properly identify his target was similarly limited. The appellant was aware that others were hunting in the area

when he fired a high powered rifle at an obscure object in a thicket. We conclude that there was substantial evidence from which the jury could and did find that he should have been aware of the substantial and unjustifiable risk of harm under the circumstances and that the circumstances were such that his failure to perceive it involved a gross deviation from the standard of care that a reasonable person would observe in the same situation.

We find no error.