Charles W. UTLEY *v.* STATE of Arkansas

CR 05-1400                                             237 S.W.3d 27

Supreme Court of Arkansas
Opinion delivered June 1, 2006

*Bearden Law Firm,* by: Mike Bearden, for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. Appellant Charles Utley, an employee of Knight's Disposal, was convicted by a jury of negligent homicide and sentenced to one year in the county jail and a fine of $1,000. He appeals, claiming that the evidence was insufficient to support his conviction. We affirm.

On January 17, 2003, Mr. Utley was driving a loaded garbage truck in the southbound lane of Highway 61 near Blytheville. Brent Young was traveling in the northbound lane of Highway 61, and W.R. Perdue was in a separate car behind Mr. Young. Mr. Young testified that, as he crossed a bridge, he saw Mr. Utley's truck coming toward him cross the center line. Mr. Young swerved to get out of the truck's way, and the truck nicked Mr. Young's car, shattering his window, and hit the bed of his truck. Mr. Utley's truck then collided with Mr. Perdue's pickup truck on the bridge. Mr. Perdue's truck exploded, and he was killed.

James Henderson was working at a cemetery near the bridge at the time of the accident. He testified that he had his back to the bridge when he heard something "go boom." He turned around and saw a big blaze of fire on the bridge and Mr. Utley's truck sliding past the bridge and into the ditch. He also testified that he did not hear anything before the "boom."

Officer James Creecy arrived at the scene at 1:15 p.m. He testified that he saw some skid marks, gouges, and yaws, or marks a vehicle makes when it is turning and bearing down instead of braking, between Mr. Utley's truck and Mr. Young's vehicle. All of these marks were in the northbound lane, indicating, first, that Mr. Utley was in the northbound lane and, second, that Mr. Utley did not swerve or apply his brakes before hitting Mr. Young. Officer Creecy testified that he saw no impact conditions on the southbound side of the highway.

Officer Darrell McClung assisted at the scene of the accident. It was his responsibility to draw a diagram of the accident scene. He testified that the area of impact of the collision with Mr. Young's vehicle was one hundred and eleven feet from the beginning of the bridge and that the impact of the collision with Mr. Perdue's vehicle was on the bridge, seven feet left of the center line in the northbound lane. He also stated that he saw no skid

marks, yaws, grooves, or any other marks to suggest that there had been any changes in either of the vehicles from the first area of impact to the second area of impact. Officer McClung stated that it appeared that Mr. Utley's truck was going in a forward direction, not sideways, in the northbound lane for about one hundred and thirty to one hundred and fifty feet before it hit Mr. Perdue's vehicle. He testified that there was no evidence of any attempt by Mr. Utley to stop.

The jury found Mr. Utley guilty of negligent homicide and sentenced him to one year in the Mississippi County Detention Center and a fine of $1,000. Mr. Utley appealed, and the court of appeals reversed his judgment of conviction. *See Utley v. State,* 93 Ark. App. 381, 219 S.W.3d 709 (2005). We granted the State's petition for review, pursuant to Ark. Sup. Ct. R. 2-4 (2005). When we grant review following a decision by the court of appeals, we review the case as though it originally had been filed in this court. *Porter v. State,* 356 Ark. 17, 145 S.W.3d 376 (2004).

Mr. Utley's sole point on appeal is that the circuit court erred in denying his motion for directed verdict because the evidence was insufficient to support the jury's finding that he was guilty of negligent homicide. We have repeatedly held that, in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Cluck v. State,* 365 Ark. 166, 226 S.W.3d 780 (2006). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Mr. Utley was charged with negligent homicide. Arkansas Code Annotated § 5-10-105(b)(1) (Repl. 2006) provides that "[a] person commits negligent homicide if he or she negligently causes the death of another person." The criminal code defines "negligently" as follows:

> (A) A person acts negligently with respect to attendant circumstances or a result of his or her conduct when the person should be aware of a substantial and justifiable risk that the attendant circumstances exist or the result will occur.

> (B) The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the

standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor.

Ark. Code Ann. § 5-2-202(4) (Repl. 2006).

The issue before us is whether, viewing the evidence in the light most favorable to the State, the evidence was sufficient to support Mr. Utley's conviction. In this case, the evidence demonstrated that Mr. Utley was driving a large commercial vehicle: a garbage truck. The only testimony from an eyewitness to the accident, Mr. Young, indicated that at the time Mr. Utley hit him, the garbage truck was over the center line in Mr. Young's lane of traffic. Mr. Young testified that he swerved to avoid the garbage truck. There was no evidence that Mr. Utley braked or swerved to avoid Mr. Young. After this collision, the evidence indicates that Mr. Utley remained in the wrong lane of traffic for between one hundred and thirty and one hundred and fifty feet before hitting Mr. Perdue on the bridge. At the time of impact with Mr. Perdue's truck, Mr. Utley was seven feet to the left of the center line. The lane was only eight feet wide. Once again, the investigating officers testified that there was no evidence that Mr. Utley braked, swerved, or did anything to avoid the second collision.

Mr. Utley contends that the State did not prove that he acted negligently. He argues in his brief that there are other possible explanations why his truck crossed the center line, such as a blowout. He claims that:

> [w]here circumstantial evidence is relied upon in a criminal prosecution, proof of a few facts or a multitude of facts all consistent with the supposition of guilt is not sufficient to warrant a verdict of guilty. In order to convict a person upon circumstantial evidence, it is necessary not only that the circumstances all concur to show that the prisoner committed the crime and be consistent with the hypotheses of guilt, since that is to be compared with all the facts proved, but that they be inconsistent with any other rational conclusion and exclude every other reasonable theory or hypothesis except for that of guilt.

*Ayers v. State*, 247 Ark. 174, 177-78, 444 S.W.2d 695, 696 (1969).

In *Ayers*, both the appellant and the victim were intoxicated. We reversed the conviction of negligent homicide because there was no conclusive evidence regarding which direction each of the

vehicles was traveling or which driver crossed the center line. We did state, however, that "[t]he criminal negligence in this case falls most heavily on the driver who crossed the center line of the highway[.]" *Id.* at 187, 444 S.W.2d at 700. In *Mercer v. State*, 256 Ark. 814, 510 S.W.2d 539 (1974), we reversed a conviction for involuntary manslaughter, requiring reckless, willful, or wanton disregard of the safety of others, where there was no evidence in the record to support the State's contention that appellant crossed the center line. In *Hunter v. State*, 341 Ark. 665, 19 S.W.3d 607 (2000), we held that the evidence was sufficient to convict the appellant of negligent homicide where the fifteen-year-old appellant crossed a double-yellow line to pass a logging truck going uphill in the rain when the collision occurred.

■ Viewing the evidence in the light most favorable to the State and considering only the evidence that supports the verdict, we hold that substantial evidence exists to support Utley's conviction of negligent homicide. The circumstantial evidence in this case is consistent with the hypothesis of guilt, and no reasonable hypothesis to the contrary was either offered by Utley or supported by the evidence. A person driving a garbage truck around a curve and on a bridge should be aware that driving on the wrong side of the road presents a substantial and unjustifiable risk that he might hit a car traveling in the opposite direction and kill someone in that car. We hold it was not error for the jury to conclude that Mr. Utley's failure to perceive that risk under the facts of this case constituted "a gross deviation from the standard of care that a reasonable person would observe in [Mr. Utley's] situation[.]" Ark. Code Ann. § 5-2-202(4) (Rep. 2006).

Affirmed.

HANNAH, C.J., dissents.

JIM HANNAH, Chief Justice, dissenting. I must respectfully dissent. The court of appeals correctly decided this case, and I agree with the reasoning set out in its opinion. I write to state my additional concerns. Under the broad language used in Ark. Code Ann. § 5-10-105(b)(1) (Supp. 2003), one might argue that Charles W. Utley may be held criminally liable; however, criminal liability has not been imposed in the past where the mental state of the criminal defendant is unproven. I do not believe that the General Assembly intended that persons be prosecuted criminally based on conclusions of mere inattention as is the apparent basis of the decision in this case.

Further, even if there were criminal liability under the statute, the State has not met its burden of proof; therefore, the motion for a directed verdict should have been granted.

Historically, liability for deaths in automobile accidents caused by common negligence have been resolved through civil litigation. Where the death has resulted from mere negligence in driving, criminal liability has not been imposed. Where there was more than mere negligence, such as in the case of intoxication, high-speed flight from police, or negligence that arises from a gross deviation from how a reasonably prudent person would act, criminal liability has been imposed over the course of many years.[1] While wandering over the centerline is certainly very dangerous, it is an occurrence that, unfortunately, is commonly witnessed in everyday driving. Many dangerous actions that inattentive drivers engage in do not give rise to criminal liability.

It appears that this change results from a change in analysis. Where before the focus was on the culpable mental state of the driver, the focus now is upon the severity of the injury that results. This is at odds with accepted law on criminal liability.

Even though Utley has been convicted of negligent homicide, why he drove over the centerline remains entirely unknown. If under the circumstances, Utley should have been aware of the risk, and his failure to perceive it was a gross deviation from the care a reasonably prudent person would exercise under those circumstances, criminal liability might arise. *See, e.g., Hunter v. State,* 341 Ark. 665, 19 S.W.3d 607 (2000). However, we don't know the answer to this question because proof was lacking. We don't know what Utley perceived. No proof was offered. The State's argument is simply that there could be no reasonable excuse. The majority agrees. The State argues that "[d]riving requires constant attention, appropriate responsiveness, and reasonable capability." The facts of *Hunter* showed that Hunter knew what the road conditions were and still engaged in the affirmative

---

[1] *See, e.g. McVay v. State,* 312 Ark. 73, 847 S.W.2d 28 (1993); *Lowe v. State,* 264 Ark. 205, 570 S.W.2d 253 (1978); *Munn v. State,* 257 Ark. 1057, 521 S.W.2d 535 (1975); *Rochester v. State,* 250 Ark. 758, 467 S.W.2d 182 (1971); *Ragsdale v. State,* 245 Ark. 296, 432 S.W.2d 11 (1968); *Weist v. State,* 240 Ark. 680, 401 S.W.2d 565 (1966); *Baker v. State,* 237 Ark. 862, 376 S.W.2d 673 (1964); *Simmerson v. State,* 71 Ark.App. 16, 25 S.W.3d 439 (2000); *Hatley v. State,* 68 Ark. App. 209, 5 S.W.3d 86 (1999); *Kenyon v. State,* 58 Ark. App. 24, 946 S.W.2d 705 (1997); *Tallant v. State,* 42 Ark.App. 150, 856 S.W.2d 24 (1993); *Courtney v. State,* 14 Ark.App. 76, 684 S.W.2d 835 (1985); *Phillips v. State,* 6 Ark.App. 380, 644 S.W.2d 288 (1982).

act of pulling out into an oncoming lane to pass a log truck, on a hill, in the rain, despite double yellow lines statutorily prohibiting passing, and despite the fact that the road spray produced by the log truck was so great he could not see. In *Hunter*, the proof showed that Hunter perceived and disregarded quite a number of dangerous conditions. All we know in the present case is that Utley pulled at least seven feet into the other lane, and we don't even know if it was an affirmative act. Even assuming it was inattention, mere inattention in driving has never been the basis of criminal liability until now.

The question that the majority opinion prompts is, are there any circumstances under which criminal liability would not arise if a person dies in an accident caused by a person who crosses the centerline? The answer is now "no." A person who causes the death of another person when he or she crosses the centerline is now strictly liable under the criminal law if the prosecuting attorney chooses to bring a criminal action. While there is ostensibly qualifying language in the majority opinion, that the truck in this case was a garbage truck, characterized as a "large commercial vehicle," the majority's analysis will certainly be applied to all vehicles in the near future. This is because the reasoning underlying this opinion is not that the death was caused because a large commercial vehicle was involved but because, as the majority states, "driving on the wrong side of the road presents a substantial and unjustifiable risk that [a person] might hit a car traveling in the opposite direction and kill someone." Again, I must note, that criminal liability under the negligent homicide statute arises when under the circumstances the person should have been aware of the risk and his or her failure to perceive it was a gross deviation from the care a reasonable, prudent person would exercise under the circumstances. *Hunter, supra.* There is no such proof in this case.

There is no question that the death of W.R. Purdue is a terrible tragedy, but the death of any person in a motor vehicle accident is a tragedy. The majority concludes that, "[a] person driving a garbage truck around a curve and on a bridge should be aware that driving on the wrong side of the road presents a substantial unjustifiable risk that he might hit a car traveling in the opposite direction and kill someone in that car." While Utley's alleged inattention may give rise to liability under the civil law, does it give rise to liability under the criminal law?

What happened to Utley? Did he doze off? Was he changing a CD or the radio? Did his mind wander? All of these acts are

certainly acts of negligence, but are they acts of criminal negligence? Are they "a gross deviation from the standard of care that a reasonable person would observe in the actor's situation," as required by Ark. Code Ann. § 2-2-202(4) (Repl. 1997)? It would appear not.

Further, in light of a lack of proof of the cause of Utley's movement into the other lane, there are other possible reasonable hypotheses of the cause of this accident other than a gross deviation from the standard of care by Utley. Was there excessive wear in the front end of the truck that he was unaware of and caused his swerve? Did he hit a pothole that threw him to his left? Was there an object he hit that forced him left?

Defaulting to an alleged failure by Utley to offer a reasonable hypothesis that does not lead to guilt is not proof beyond a reasonable doubt. That turns criminal law on its head, essentially placing Utley in the position of being guilty until he proves himself innocent.

I do not agree with the majority's conclusion that "[t]he circumstantial evidence in this case is consistent with the hypothesis of guilt, and no reasonable hypothesis to the contrary was either offered by Utley or supported by the evidence." There is a lack of substantial evidence to support the verdict. I would reverse and dismiss this case. The court of appeals should be affirmed.