SLIP OPINION

Cite as 2015 Ark. App. 295

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-14-1052

| | |
|---|---|
| NATHAN NEAL SIZEMORE<br>APPELLANT | **Opinion Delivered** May 6, 2015 |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. CR 2014-919-1] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE WILLIAM A. STOREY, JUDGE |
| | AFFIRMED |

### RITA W. GRUBER, Judge

Appellant Nathan Neal Sizemore was convicted by a jury of negligent homicide and sentenced to eight months in the county jail and a fine of $1,000. He appeals, claiming that the evidence was insufficient to support his conviction. We affirm his conviction.

On August 26, 2012, at approximately 1:50 p.m., appellant, who was eighteen at the time and did not have a driver's license, was driving a friend's car east on Highway 16 in Fayetteville. The victim, Angela Sue Rife, was driving her Jeep Liberty west on Highway 16 with her fiancé, Aaron MacAbee, and her son, who was in a car seat in the back. Mr. MacAbee testified that they were traveling at approximately 55 to 56 miles per hour when he saw appellant's car drift over the double-yellow line. Mr. MacAbee testified that appellant came toward them for three to five seconds. Although Ms. Rife applied her brakes and steered across the white line away from appellant's car, appellant's car collided head-on with Ms. Rife's Jeep, and Ms. Rife was killed. Mr. MacAbee testified that it was not raining and he did

not observe any obstacles on the road before the accident.

Ricky Loge was driving the vehicle in front of appellant and saw him veer across the road and collide with Ms. Rife. He testified that he was driving between fifty and fifty-five miles per hour and that appellant was driving the same speed behind him. Mr. Loge testified that appellant did not signal, did not attempt to pass him, and did not break before drifting into the oncoming lane of traffic. He said the road surface appeared to be normal with no potholes or broken pavement. He also testified that it was not raining and he did not walk through any water when he went to the accident scene after the wreck.

Kyle Reynolds, a retired fireman and EMT, was driving the same direction and route as appellant and stopped at the scene when he came upon it several minutes after the accident. He testified that it was not raining and he did not recall any puddles when he walked to the scene.

Officer Elliott Luebker of the Fayetteville Police Department testified that he arrived on the scene several minutes after the accident. His patrol car is equipped with a mobile video-recording device, which was operating on the day of the accident. He testified that there were no puddles of water or damp roads at the scene of the accident or in the immediate vicinity and that it was not raining when he arrived on the scene. The video revealed no puddles or obstacles in the roadway near the crash site.

Officer David Nguyen was employed by the Fayetteville Police Department as a patrol officer and an accident reconstructionist at the time of the accident. He testified that the only skid marks at the scene were made by Ms. Rife's Jeep. He explained that skid marks occur

SLIP OPINION

when the wheels lock up, creating friction that leaves marks on the highway. He explained that yaw marks indicate that the tires lost grip. Officer Nguyen testified that appellant's car did not make any skid marks or yaw marks. He also testified that his inspection of the scene did not reveal any potholes, cracks, or dips in the road.

Officer Brian Lindabury, a detective with the Fayetteville Police Department, testified that he was assigned to investigate the accident. He said that he interviewed appellant on January 7, 2013. Appellant told Officer Lindabury that the accident was caused when he hit a puddle that caused his car to hydroplane. Appellant testified at trial that he remembered hitting water and then waking up in the hospital.

Appellant's sole point on appeal is that the circuit court erred in denying his motion for directed verdict because the evidence was insufficient to support the jury's finding that he was guilty of negligent homicide. The test for determining sufficiency of the evidence is whether there is substantial evidence, direct or circumstantial, to support the verdict. *Jackson v. State*, 2011 Ark. App. 528, at 5, 385 S.W.3d 394, 397. On appeal, we consider only the evidence that supports the verdict, viewing the evidence in the light most favorable to the State. *LeFever v. State*, 91 Ark. App. 86, 89, 208 S.W.3d 812, 815 (2005). Evidence is substantial if it is forceful enough to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Harmon v. State*, 340 Ark. 18, 22, 8 S.W.3d 472, 474 (2000). We do not weigh the evidence presented at trial, as that is a matter for the fact-finder. *Id.* at 22, 8 S.W.3d at 474–75. Witness credibility is an issue for the fact-finder, which is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions

SLIP OPINION

of conflicting testimony and inconsistent evidence. *LeFever*, 91 Ark. App. at 89, 208 S.W.3d at 815.

Appellant was convicted of negligent homicide. Arkansas Code Annotated section 5-10-105(b)(1) (Supp. 2011) provides that "[a] person commits negligent homicide if he or she negligently causes the death of another person." The criminal code defines "negligently" as follows:

> (A) A person acts negligently with respect to attendant circumstances or a result of his or her conduct when the person should be aware of a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.

> (B) The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor.

Ark. Code Ann. § 5-2-202(4) (Repl. 2006).

The issue before us is whether, viewing the evidence in the light most favorable to the State, the evidence was sufficient to support appellant's conviction. Appellant argues that the accident was caused by the rain, was instantaneous, and gave him no time to react. He contends that substantial evidence does not support his conviction for negligent homicide.

We turn to our supreme court's opinion in *Utley v. State*, 366 Ark. 514, 237 S.W.3d 27 (2006), in which the court affirmed a negligent-homicide conviction in similar circumstances. In that case, Mr. Utley was driving a commercial garbage truck and crossed the center line, killing a driver traveling in the opposite direction. *Id.* In that case, as here, there was no evidence that Mr. Utley braked, swerved, or did anything to avoid hitting the victim. *Id.* The court reasoned that "[a] person driving a garbage truck around a curve and

on a bridge should be aware that driving on the wrong side of the road presents a substantial and unjustifiable risk that he might hit a car traveling in the opposite direction and kill someone in that car." *Id.* at 518, 237 S.W.3d at 30. Although appellant told Detective Lindabury four months after the accident that the accident was caused because his car hit water and hydroplaned, and he testified at trial that he remembered hitting water in the car and then waking up in the hospital, there was evidence that there were neither puddles of water nor obstacles on the road near the scene of the accident. In fact, appellant's was the only testimony that there were puddles near the scene of the accident.

Mr. Loge, who was driving immediately in front of appellant, said the road surface appeared to be normal with no potholes or broken pavement, that it was not raining at the time of the accident, and that he did not walk through any water when he went to the accident scene after the wreck. He also testified that appellant's car seemed to "drift" into the other lane. His description did not suggest that appellant lost control of his car as when a car hydroplanes.

Kyle Reynolds testified that it was not raining when he stopped to help, and he did not recall any puddles when he walked to the scene. Officer Luebker testified that there were no puddles of water or damp roads at the scene of the accident or in the immediate vicinity and that it was not raining when he arrived on the scene. Moreover, his mobile video revealed no puddles or obstacles in the roadway near the crash site. Officer Nguyen, the accident reconstructionist, testified that the only skid marks at the scene were made by Ms. Rife's Jeep and that there were no yaw marks. The jury could certainly have inferred from

this testimony that appellant's tires never lost traction, as would have occurred if the car had hydroplaned.

Viewing the evidence in the light most favorable to the State, we hold that substantial evidence supports the jury's verdict.

Affirmed.

VIRDEN, J., agrees.

WHITEAKER, J., concurs.

**PHILLIP T. WHITEAKER, Judge, concurring.** I agree with the majority opinion that appellant Nathan Sizemore's conviction must be affirmed because the supreme court's decision in *Utley v. State*, 366 Ark. 514, 237 S.W.3d 27 (2006), is controlling. I write separately, however, to reiterate the same concerns that Chief Justice Hannah expressed in his dissenting opinion in *Utley*.

In order to secure a conviction for negligent homicide, the State must prove beyond a reasonable doubt that the defendant negligently caused the death of another person. Ark. Code Ann. § 5-10-105(b)(1) (Supp. 2011). A person acts negligently with respect to attendant circumstances or a result of his or her conduct when the person should be aware of a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur. Ark. Code Ann. § 5-2-202(4)(A) (Repl. 2006). The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation, considering the nature and purpose of the actor's conduct and the circumstances known to the actor. Ark. Code

Ann. § 5-2-202(4)(B).

This definition of criminal negligence is different from the definition of negligence in a civil case, which is merely the failure to do something that a reasonably careful person would do. *Wal-Mart Stores, Inc. v. Londagin*, 344 Ark. 26, 37 S.W.3d 620 (2001); *City of Little Rock v. Cameron*, 320 Ark. 444, 897 S.W.2d 562 (1995). The degree of negligence sufficient to establish civil liability is not sufficient to establish criminal liability. *Hunter v. State*, 341 Ark. 665, 19 S.W.3d 607 (2000); *Phillips v. State*, 6 Ark. App. 380, 644 S.W.2d 288 (1982). Our jury instructions on negligent homicide reflect this distinction. *See* AMI Crim. 2d 1005 ("The term 'negligently' as used in this criminal case means more than it does in civil cases."). In *Phillips v. State*, 204 Ark. 205, 161 S.W.2d 747 (1942), our supreme court stressed the heightened standards for finding criminal negligence:

> The courts and the authorities agree, in the absence of statutory regulations, that a higher degree of negligence is required to establish criminal negligence than to establish liability in a civil action. The negligence required in a criminal proceeding must be more than a lack of ordinary care and precaution. It must be something more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life. It must be shown that a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on the conduct of the offender.

*Phillips*, 204 Ark. at 212, 161 S.W.2d at 750.

In his dissenting opinion in *Utley*, *supra*, Chief Justice Hannah wrote that there had been a "change in analysis" in ascertaining whether a conviction for negligent homicide is supported by substantial evidence. He noted that, rather than focusing on the culpable mental state of the driver, the "focus now is upon the severity of the injury that results." *Utley*, 366 Ark. at 519, 237 S.W.3d at 37 (Hannah, C.J., dissenting). Rather than examining the

necessary question of whether, under the circumstances, the person should have been aware of the risk and whether his or her failure to perceive it was a gross deviation from the care a reasonable and prudent person would exercise under the circumstances, the courts now look to see only whether the defendant's car crossed the center line and whether someone died. If that happened, then the defendant is criminally liable for homicide. His intent or state of mind has become irrelevant, despite the fact that the defendant's mens rea is an element of the offense that the State must prove beyond a reasonable doubt. *See, e.g.*, *Norton v. State*, 271 Ark. 451, 453–54, 609 S.W.2d 1, 3 (1980) (where intent is an element of the offense, the State must prove each element beyond a reasonable doubt). By judicial fiat, the courts have turned any fatality caused by a head-on car crash into a strict–liability offense.

I agree with Chief Justice Hannah that the *Utley* majority changed the lens through which car-crash negligent-homicide cases are viewed. Nonetheless, *Utley* controls in this case, and I must therefore reluctantly agree to affirm.

*Evans and Evans Law Firm*, by: *James E. Evans, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., and *Matthew Rowland*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the supervision of *Darnisa Evans Johnson*, for appellee.