Cite as 2019 Ark. 334

# SUPREME COURT OF ARKANSAS
No. CR–18–839

| | |
|---|---|
| BENJAMIN WARD LEDWELL<br><div align="right">APPELLANT</div><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | **Opinion Delivered:** November 14, 2019<br><br>APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR-16-124]<br><br>HONORABLE CHRIS E WILLIAMS, JUDGE<br><br><u>REVERSED AND DISMISSED</u>. |

**RHONDA K. WOOD, Associate Justice**

Benjamin Ledwell appeals his four convictions of negligent homicide. At trial, Ledwell moved for directed verdict at the close of the State's evidence, and again at the close of all the evidence. Both motions were denied. On appeal, he contends that the circuit court erred in denying his motions for directed verdict. We agree.

## I. *Facts*

On May 19, 2015, Benjamin Ledwell was driving his pickup truck north on Highway 7 in Hot Spring County. Cindy Rhein, Allen Rhein, and their two sons were heading south in the opposite lane. As Ledwell approached a bend in the road, his truck crossed the center line and collided with the Rheins' vehicle. The driver and all three passengers were killed. At trial, there was no dispute that Ledwell traversed the center line and caused the wreck that resulted in these catastrophic deaths. Instead, the question was

whether Ledwell's conduct was criminally negligent. The State's case hinged on two primary sources of evidence.

First, the jury heard testimony from the State's accident reconstruction coordinator, Tim Carter. Carter explained how he gathered data from an airbag control module in Ledwell's truck. The module recorded five seconds of pre-crash data. Among other things, it revealed the truck's speed and percent of accelerator depression in half-second increments. It also reported the degree of steering wheel angle at every tenth of a second. The data demonstrated that, in the five seconds before the collision, Ledwell's speed increased from 46 to 55 miles an hour. It also revealed that Ledwell did not attempt to brake before impact.

On cross-examination, Carter testified that the pre-crash data also demonstrated that Ledwell decreased his accelerator depression between 1 and .5 seconds before impact, and that Ledwell increased the degree of steering wheel angle in the last fractions of a second before the collision. Carter admitted that both of these findings were indicative of Ledwell's efforts to avoid the crash. He further noted that 1.5 seconds is the generally accepted amount of time required to physically react to a perceived danger. Consistent with these findings, Carter concluded in his report and testified at trial, that given the departure paths and final-rest locations of each vehicle, Ledwell was attempting to return "to the northbound lane, to the proper lane when the accident occurred."

Next, the State focused heavily on Ledwell's statement to hospital personnel—namely, that he leaned over to pick something up off the floor of his truck when he entered the wrong lane. Aside from this, a witness described the stretch of road as "dangerous," and various police officers described their respective roles and findings in the investigation.

After the circuit court denied his motions for directed verdict, a jury convicted Ledwell on all four counts of negligent homicide. For each count, Ledwell was sentenced to one-year imprisonment in the county jail. The sentences were then suspended on the jury's recommendation. Ledwell now appeals the denial of his directed-verdict motions.

## II. *Standard of Review*

On appeal, a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Dortch v. State*, 2018 Ark. 135, at 5, 544 S.W.3d 518, 522. In reviewing a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the State, considering only evidence that supports the verdict. *Gill v. State*, 2015 Ark. 421, at 3, 474 S.W.3d 77, 79. We will affirm the verdict if substantial evidence supports it. *Id*. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id*. Substantial evidence may be direct or circumstantial. *Id*. But circumstantial evidence is substantial only if it excludes every other reasonable hypothesis than the guilt of the accused. *Id*.

## III. *Negligent Homicide*

A person commits negligent homicide if he negligently causes the death of another. Ark. Code Ann. § 5-10-105(b)(1) (Repl. 2013). According to Arkansas Code Annotated section 5-2-202(4),

> (A) A person acts negligently with respect to attendant circumstances or a result of his or her conduct when the person should be aware of a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.

3

(B) The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor.

Notably, criminal negligence sets a higher bar than civil negligence. *Gill*, 2015 Ark. 421, at 5, 474 S.W.3d at 80. It requires "something more" than a mere failure to exercise reasonable care. *Id*. at 6. The negligent conduct must constitute a "gross deviation" from the standard of care that a reasonable person would have exercised in the actor's situation. *Id*.

### IV. *Sufficiency of the Evidence*

Ledwell contends that the State failed to sufficiently evidence that he should have been aware of a substantial risk that the deaths would occur as a result of his conduct, and that his conduct grossly deviated from the standard of care that a reasonable person would have exercised in his situation. We agree. Substantial evidence did not support the verdict.

Although "gross deviation" is not defined by statute, this court has had occasion to apply it in the car-wreck context. For instance, in *Utley v. State*, we held that the defendant's actions constituted "a gross deviation from the standard of care" when he was driving a large commercial garbage truck on a two-lane bridge, crossed seven feet into the opposing lane, and plowed into two oncoming vehicles without braking or swerving. 366 Ark. 514, 517–18, 237 S.W.3d 27, 29–30 (2006) (emphasizing the defendant's failure to brake, swerve, or do anything to avoid the collisions).

In *Hunter v. State*, we affirmed the defendant's negligent-homicide conviction, reasoning that the defendant grossly deviated from the standard of care when he ignored the double–yellow, no-passing lines in an attempt to pass a log truck while driving up a hill in

4

the rain. 341 Ark. 665, 669, 19 S.W.3d 607, 610 (2000). We have likewise affirmed negligent-homicide convictions in cases where the defendant was speeding while fleeing from police, and where the defendant was speeding in the wrong lane while intoxicated. *See Lowe v. State*, 264 Ark. 205, 209, 570 S.W.2d 253, 256 (1978); *Baker v. State*, 237 Ark. 862, 864, 376 S.W.2d 673, 674 (1964).

Conversely, in *Gill*, 2015 Ark. 421, 474 S.W.3d 77, we reversed the defendant's negligent-homicide conviction. There, the defendant was convicted of negligent homicide for inexplicably failing to see the victim's vehicle as he proceeded through a stop sign. *Id*. at 7, 474 S.W.3d at 81. Having considered the same line of cases discussed above, we reasoned that the State failed to establish a gross deviation because "there was no evidence that Gill was engaged in any criminally culpable risk creating conduct." *Id*. at 7–8, 474 S.W.3d at 81. He was not speeding, he was not driving erratically, he was not under the influence of alcohol, and he was not using a phone. *Id*. In fact, Gill did not even receive a traffic citation for his conduct. *Id*. at 4, 474 S.W.3d at 80. The State merely established that Gill failed to see the victim's vehicle as he pulled out. We concluded that "Gill's failure to see Holt's vehicle resulted in a tragic death, but that unexplained failure, without more, does not constitute criminally negligent homicide." *Id*. at 9, 474 S.W.3d at 82.

Here, considering only the evidence that supports the verdict, viewed in the light most favorable to the State, the prosecution established that as Ledwell negotiated a turn, he became distracted, accelerated within the speed limit, entered the wrong lane, collided with an oncoming car, and catastrophically caused the deaths of Cindy Rhein, Allen Rhein, and

5

their two sons. Although Ledwell attempted to swerve back and decreased his application of the accelerator in the last second, he did not apply his brakes.

The facts here are most like the facts in *Gill*. The State failed to put on substantial evidence that Ledwell was engaged in criminally culpable risk-creating conduct. There was no evidence that he was speeding, driving erratically, under the influence of alcohol, or using a phone. Like *Gill*, Ledwell did not receive a traffic citation for his conduct. Unlike *Hunter*, Ledwell did not make a conscious decision to illegally cross a double-yellow, no-passing line, in the rain, for his benefit. And unlike *Utley*, the State's own expert testified that, moments before impact, Ledwell "was trying to get back to" his lane.

The State points to Ledwell's statement that he was leaning over to pick something up off the floor of his truck as evidence of a "gross deviation." But the reason *why* Ledwell bent over is missing. Indeed, criminal negligence is defined as a "gross deviation from the standard of care . . . considering the nature *and purpose* of the actor's conduct." Ark. Code Ann. § 5-2-202(4)(B) (emphasis added). In *Hunter*, *Lowe*, and *Baker*, the State established the purpose of the defendants' conduct. But here, the State failed to present any evidence that Ledwell's purpose for bending over, given the situation, amounted to a gross deviation from the standard of care.

This shortcoming is further highlighted by our standard of review. Indeed, evidence is substantial only if it compels a conclusion *without resorting to speculation or conjecture*, and circumstantial evidence is substantial only if it excludes *every other reasonable hypothesis* than the guilt of the accused. *Gill*, 2015 Ark. 421, at 3, 474 S.W.3d at 79. Here, as in *Gill*, the

reason for Ledwell's conduct remains unexplained. And without an explanation, the jury was forced to speculate and conjecture in reaching its conclusion.

As tragic as this case is, this court's role is to apply the law. The circuit court erred in denying Ledwell's motions for directed verdict. We reverse all four of Ledwell's negligent homicide convictions and dismiss the case.

V. *Instructions to Correct Mandate*

This case first came to us by way of a State appeal from an order granting Ledwell's motion to dismiss under Arkansas Code Annotated section 5-1-109(f). On September 21, 2017, we held that the circuit court erred in granting Ledwell's motion to dismiss, and we reversed and remanded the case for further proceedings. *State v. Ledwell*, 2017 Ark. 252, 526 S.W.3d 1.

We now note that the mandate issued in the original appeal contains a clerical error. In relevant part, it states: "It is the decision of the court that the *conviction* is reversed and remanded for the reasons set out in the attached opinion." (Emphasis added.) But Ledwell was not appealing a conviction in that case. Rather, the State was appealing the court's order granting Ledwell's motion to dismiss. Although this is simply a clerical error, we take this opportunity to correct the mistake. Our clerk is directed to reissue a corrected mandate, replacing "conviction" with "the circuit court's judgment."

Reversed and dismissed; Supreme Court Clerk instructed to reissue a corrected mandate in *Ledwell v. State*, 2017 Ark. 252, 526 S.W.3d 1.

HUDSON, WYNNE, and WOMACK, JJ., dissent.

**SHAWN A. WOMACK, Justice, dissenting.** I disagree with the majority's decision to reverse Ledwell's negligent-homicide convictions and dismiss the case. Accordingly, I dissent.

The majority argues the facts in the present case are most similar to those in *Gill v. State*, 2015 Ark. 421, 474 S.W.3d 77. In *Gill*, this court reversed a negligent-homicide conviction where there was no evidence that Gill was speeding, driving erratically, under the influence of alcohol, using a phone, or engaging in other similar behavior. Yet, this case is incongruent with the facts of *Gill*—Ledwell *was* driving erratically at the time of the collision. The facts establish that while negotiating a curve on a rural, two-lane highway, Ledwell leaned over to pick something off the floorboard and swerved into the left lane in violation of Arkansas traffic law. *See* Ark. Code Ann. § 27–51–301 (Supp. 2017). Furthermore, the Arkansas State Police collision report concluded that prior to the collision, Ledwell was accelerating and never braked. These facts alone could be viewed as a "gross deviation" from the standard of care. Ultimately, whether Ledwell's conduct constituted a "gross deviation" is a question of fact for the jury to determine and I believe the State presented substantial evidence for the jury to reach the conclusion it did. For these reasons, I would affirm.

HUDSON and WYNNE, JJ., join in this dissent.

*Hancock Law Firm*, by: *Charles D. Hancock*; and *Crisp & Freeze*, by: *J. David Crisp*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.