Richard BOOTH *v.* STATE of Arkansas

CA CR 88-34                                    761 S.W.2d 607

Court of Appeals of Arkansas
Division I
Substituted Opinion on Denial of Rehearing
January 11, 1989.*

*JENNINGS, J., not participating on rehearing.

116

*Priscilla Karen Pope*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Chief Judge. This appeal comes to us from Benton County Circuit Court, First Division. Appellant, Richard Booth, appeals from a judgment entered on July 22, 1987, wherein he was found guilty of leaving the scene of an accident involving death or personal injury, a violation of Arkansas Code Annotated § 27-53-101 (Supp. 1987) and two counts of manslaughter, a violation of Arkansas Code Annotated § 5-10-104 (1987) and the sentences and fines imposed therefor. We affirm.

A felony information was filed December 20, 1984, charging appellant with leaving the scene of an accident involving death or physical injury and another filed April 23, 1985, charging appellant with two counts of manslaughter for the deaths of Mark and Marcene Gilliland. Prior to trial, appellant moved to suppress all evidence obtained in violation of his fourth and fourteenth amendment rights against unreasonable searches and seizures. The court denied appellant's motion and the charges were tried to a jury which found appellant guilty on all counts and sentenced him to six years imprisonment and a $10,000 fine for leaving the scene of the accident and ten years imprisonment and $10,000 fine on each manslaughter conviction. From the judgment, comes this appeal.

Appellant raises the following two points for reversal: 1) The

trial court erred in denying defendant's motion to suppress and objections to introduction of evidence taken from defendant's vehicle without a valid search warrant, without reasonable cause and absent exigent circumstances; 2) the trial court erred in denying defendant's motions for a directed verdict because the state failed to introduce any substantial evidence from which the jury could find the requisite intent or identify the defendant as the perpetrator of either charge beyond a reasonable doubt.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Vanderkamp v. State*, 19 Ark. App. 361, 721 S.W.2d 680 (1986). When there is a challenge to the sufficiency of the evidence, the court must review that point prior to considering any alleged trial error. *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984). In determining the sufficiency of the evidence, we consider all evidence, including any which may have been inadmissible, in the light most favorable to appellee. *Id.* We will affirm the conviction on appeal if there is any substantial evidence to support the verdict. *McCoy* v. *State*, 293 Ark. 49, 732 S.W.2d 156 (1987). Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Phillips* v. *State*, 17 Ark. App. 86, 703 S.W.2d 471 (1986).

Appellant was convicted of violating the manslaughter statute which provides that a person commits manslaughter if he recklessly causes the death of another. "Recklessly" is defined in Arkansas Code Annotated § 5-2-202(3) (1987) as follows:

> (3) "Recklessly." A person acts recklessly with respect to attendant circumstances or a result of his conduct when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation[.]

Appellant contends that there was insufficient evidence to identify him as the perpetrator of the crimes charged or to establish that his conduct was "reckless" as required by the manslaughter statute. Viewed in the light most favorable to

appellee, the evidence reveals that at approximately 1:15 a.m. on December 9, 1984, Mark and Marcene Gilliland were killed in a hit and run automobile accident on Highway 43 near Siloam Springs, Arkansas. Physical evidence at the scene reveals that the Gilliland vehicle was traveling south on the highway and the fleeing vehicle was a reddish-orange tractor-trailer rig traveling north.

A police investigation ensued and based upon physical and verbal evidence gathered, appellant was implicated as the driver of the vehicle that left the scene of the accident in which the Gillilands were killed. A compilation of the evidence generally reveals that Michael Wacker hired appellant to deliver hay to his farm near Gentry, Arkansas. Appellant, a Kansas resident, delivered the hay on December 8, 1984, and then went to Mick's Place, a bar owned by Michael and Dee Wacker in Sandusky, Oklahoma. Mr. Wacker testified that he arrived at the bar at approximately 3:00 p.m. and appellant was already there. Mr. Wacker stated that appellant was drinking at that time and was very argumentative and disruptive toward the other customers.

Dee Wacker testified that she arrived at the bar around 6:00 p.m. and observed that appellant was intoxicated, belligerent and talking vulgarly. The Wackers refused to serve appellant any alcoholic beverages after 6:00 p.m. or 7:00 p.m. because of his intoxicated condition. Appellant became angered by this and attempted to take drinks from other customers. At approximately this time, it was determined that appellant's tractor-trailer was parked partially on the highway. Appellant was too intoxicated to get into the cab of the truck and another patron of the bar moved the vehicle off the road for him. At that time, Mr. Wacker took appellant's truck keys so he could not drive.

Appellant left Mick's Place with a woman to go to another bar to drink at 8:30 p.m. or 9:00 p.m. He returned an hour or an hour and one-half later in a more intoxicated condition and remained at Mick's Place until it closed. Although the Wackers tried to persuade appellant to stay overnight at their apartment, he insisted on driving back to his home in Kansas. The evidence is inconclusive as to the exact time of appellant's departure. Dee Wacker testified that appellant drove away from the bar between 12:50 a.m. and 1:00 a.m. on December 9, 1984, while Michael

Wacker estimated appellant's departure time as between 1:00 a.m. and 1:10 a.m. There was evidence presented that the clock in the bar was set back ten minutes.

Pursuant to a conversation Mr. Wacker had with appellant, Wacker testified that appellant was planning on driving home on Highway 43 to avoid going through Gentry, Arkansas, because he previously received a DWI citation in that town. Appellant left on Highway 12 going toward the Highway 43 junction. When appellant left Mick's Place the brakes on his truck did not have enough air pressure and the vehicle skidded ten or twenty feet. Testimony indicated that appellant's vehicle made loud, screeching noises as he drove away.

Don Blagg, who lives at the intersection of Highways 43 and 12 on the Oklahoma-Arkansas border, testified that he was awakened at 1:00 a.m. on December 9, 1984, by a rumbling noise which sounded like a truck running off the road. Later Mr. Blagg saw skid marks on Highway 43 consistent with the noise he heard.

The persons with whom the Gillilands spent the evening of December 8, 1984, also testified. Collectively their testimony reveals that on this evening the victims were guests in the home of Carl Bonner. The Gillilands, along with the other guests, left the Bonner residence at approximately 1:00 a.m. on December 9, 1984, and arrived at Highway 43 somewhere around 1:00 a.m. to 1:05 a.m.

The accident was discovered by Mike Burrow and Doug McAfee on December 9, 1984, between 12:30 a.m. and 1:15 a.m. as they were traveling north on Highway 43. Mr. Burrow testified that there were fresh dual tire marks from a large truck on the highway and the side of the victims' tan vehicle had red paint on it. When these young men were interviewed at the scene neither told authorities that they met a vehicle on the highway before encountering the accident scene. However, approximately eight days after the accident, Mr. McAfee telephone the police to inform them that he remembered being run off the road on the that evening by a long-nose tractor with a flatbed trailer. Mr. McAfee did not testify at trial; however, Mr. Burrow's testimony reveals that they did not meet any vehicles on the highway prior to discovering the Gilliland vehicle and were not run off the road by a semi-truck.

The evidence reveals that the victims' vehicle is a 1981 tan colored Ford Escort and the appellant's vehicle is a 1976 Peterbilt cab-over brown and white tractor with a reddish-orange flatbed trailer. Physical evidence was presented that indicated that appellant's tractor-trailer was the vehicle which left the scene of the accident in which the Gillilands were killed. From all the evidence gathered, the estimated time of the accident was 1:15 a.m. on December 9, 1984.

Numerous police officers testified about the condition of both vehicles. Their testimony generally reveals that the skid marks at the scene were made by a large truck traveling north. Comparable dual skid marks were found from Mick's Place to the Blagg residence, as well as in every curve leading to the scene of the accident. The victims' car was knocked approximately thirty-five feet off the highway sustaining primary damage to the driver's side. Red paint transfers were found on the hood, left front quarter panel, and door of the victims' tan car. Based upon the skid marks and location of damage to the victims' car, the authorities began looking for a reddish-orange tractor-trailer rig with damage to the driver's side.

A search of appellant's vehicle revealed evidence of recent damage consistent with their conclusions. There was a six-to-eight-inch, tan paint transfer above the bumper of the tractor and the same color paint transfer along the left side of the trailer bed approximately six feet in length. The front left axle of the rear tires was pushed back approximately one foot and the tires on the left side of the front axle were flat. Also, particles of glass and tan paint chips were found on the top and bottom of the trailer. The trailer bed was dirty except in the areas where the tan paint was transferred. These areas revealed a clean surface and the part of the trailer scraped down to the base revealed a shiny and rust-free surface indicating a recent scrape. As further proof that the two vehicles collided, evidence was presented that the distance from the ground to where the paint transfers began on appellant's trailer was thirty-four and one-half inches and the distance from the ground to the bottom part of the red paint transfers on the victims' car was also thirty-four and one-half inches.

Steve Cox, the Chief Criminalist of the Arkansas State Crime Laboratory testified that he performed tests comparing

paint and glass samples removed from both the Gilliland vehicle and appellant's vehicle. Based upon scientific testing methods, Mr. Cox testified that the tan paint found on appellant's trailer came from a 1981 Ford product and could have come from the appellant's 1981 Ford Escort. Also, he concluded that the red paint found on the victims' car could have come from appellant's trailer. Mr. Cox also testified that five of the nine analyzed glass samples taken from appellant's trailer matched the glass samples taken from the victims' car. Mr. Cox concluded that the odds that the two vehicles did not come into contact with each other are "extremely remote."

■ Appellant argues that the above facts are insufficient to support his conviction. We disagree. Guilt need not always be proven by direct evidence. Circumstantial evidence can present a question to be resolved by the trier of fact and be the basis to support a conviction. *Yandell* v. *State*, 262 Ark. 195, 555 S.W.2d 561 (1977). We have often said that the fact that evidence is circumstantial does not render it insubstantial. *See, e.g., Ashley* v. *State*, 22 Ark. App. 73, 732 S.W.2d 872 (1987). The jury is allowed to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence. *Payne* v. *State*, 21 Ark. App. 243, 731 S.W.2d 235 (1987).

■ Viewing the above and all evidence of record in the light most favorable to appellee, we find substantial evidence from which the jury could have found appellant guilty of the crimes charged and that his conduct was reckless and exhibited a conscious disregard of a perceived risk. Therefore, we affirm as to appellant's second point for reversal.

Lastly, we address appellant's argument that the trial court erred in denying his motion to suppress and objections to introduction of evidence taken from appellant's vehicles without a valid search warrant, without reasonable cause and absent exigent circumstances.

At the pretrial suppression hearing and throughout the trial, appellant sought to suppress all photographs, paint and glass samples, test results and testimony from the seizure and subsequent searches of appellant's vehicle obtained in violation of the fourth and fourteenth amendments to the United States Constitution.

The record reveals that Officer Edward Boring, a trooper for the Kansas Highway Patrol, received a call on December 9, 1984, from the Arkansas State Police stating that appellant was suspected of being involved in a hit and run accident near the Oklahoma-Arkansas border involving two fatalities. The Kansas authorities also received an independent lead which implicated appellant. The Kansas officer was told that the vehicle that left the scene was a flatbed red or burnt orange tractor-trailer with damage to its left side and the victims' car was a tan Ford Escort. Kansas officers spoke to appellant at his home on that day and obtained his permission to look at his vehicle. Appellant told the officers that his truck was parked at a local tavern. Upon looking at the vehicle, the officers determined that it was the vehicle that had been involved in the fatal accident. Photographs were taken of the vehicle parked at the tavern.

The officers returned to appellant's home and read him his *Miranda* warnings. During a brief period of questioning, appellant admitted delivering hay to Arkansas on the previous day but refused to tell the time he returned home. The vehicle was impounded and remained in the custody of the Kansas authorities until December 21, 1984. The vehicle was examined and various paint and glass samples were removed on December 11, 1984, and on December 21, 1984.

It is well settled that an officer may conduct searches and make seizures without a warrant if consent is given to the search. Ark. R. Crim. P. 11.1. Additionally, any weapons or other things used or likely to be used as means of committing a criminal offense are permissible objects of seizure. Ark. R. Crim. P. 10.2.

Here, appellant gave the authorities consent to view his vehicle; however, even absent such consent, the appellant had no reasonable expectation of privacy to the outside of his tractor-trailer parked on a public street in front of a tavern. *See, e.g., Cardwell v. Lewis,* 417 U.S. 583 (1974). Upon viewing the vehicle, the police had probable cause to believe that appellant's vehicle was the instrument of the deaths and was the item to be seized and examined for evidence. While this issue has not arisen in this state, other jurisdictions have addressed the seizure of vehicles because of their potential evidentiary value as the "instrumentality of the crime."

In the recent case of *People* v. *Griffin*, ___ Cal. 3d ___, 761 P.2d 103, 251 Cal. Rptr. 643 (1988) the Supreme Court of California upheld the warrantless search of the defendant's impounded truck on the ground of the "instrumentality" exception to the warrant requirement, i.e., that the vehicle itself was an instrumentality of the crime or was itself evidence. In *Griffin*, the appellant's van had a bloody shoe print on the floorboard which appeared to match a bloody shoe print found at the scene of the murder. The court found that the bloodstains that had soaked into the floorboard of the truck were clearly an appropriate subject of scientific examination and within the limits of the instrumentality exception.

In the vehicular assault case of *People* v. *Zamora*, 695 P.2d 292 (Colo. 1985) the court upheld the warrantless search of an impounded automobile because it was legally seized as evidence itself based on the victim's description of the car and identity of the driver. The court held that when an object is lawfully seized and the police have a reasonable belief that the object is itself evidence of the commission of a crime, a subsequent examination of the object made proximate in time to the seizure, and undertaken for the purpose of determining its evidentiary value, is not an unlawful search.

In *People* v. *Teale*, 70 Cal. 2d 497, 450 P.2d 564, 75 Cal. Rptr. 172 (1969) the court upheld the warrantless seizure of an automobile in which police had cause to believe that the victim was shot. The officers seized the car incident to lawful arrest and ten days later the car was examined by a criminologist who found the victim's blood splattered on the interior. In that case the court found no violation of the fourth amendment because the automobile was itself evidence subject to seizure. The court analogized the situation to a case in which a person suspected of homicide is found in possession of a gun. It stated that it has never been held that a search warrant is necessary to enable the police to perform ballistic testing to determine if the gun was the one used in the killing. The *Teale* court, quoting *People* v. *Webb*, 66 Cal. 2d 107, 424 P.2d 342, 56 Cal. Rptr. 902 (1967) also stated:

> The implication is that when the police lawfully seize a car which is itself *evidence* of a crime rather than merely a container of incriminating articles, they may postpone

searching it until arrival at a time and place in which the examination can be performed in accordance with sound scientific procedures.

*Teale*, 66 Cal. 2d at ___, 450 P.2d at 570-571, 75 Cal. Rptr. at 178-79.

This principle was again followed in *State* v. *Lewis*, 22 Ohio St. 2d 125, 258 N.E.2d 445, *cert. denied*, 400 U.S. 959 (1970), where it was held that since there was reasonable ground to believe that defendant's automobile was an instrumentality used in committing a murder, removal of paint samples for scientific examination was neither a search nor a seizure. No search warrant was required to validate the examination even though the examination was conducted at a place and time remote from the seizure.

The propriety of a warrantless seizure and search where the vehicle is the evidence or instrumentality of a crime is implicit in several United States Supreme Court decisions as well. *See e.g., Cardwell* v. *Lewis*, 417 U.S. 583 (1974); *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971); *Cooper* v. *California*, 386 U.S. 58 (1967); *Carroll* v. *United States*, 267 U.S. 132 (1925).

In reviewing a trial judge's ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances. We reverse only if the trial judge's ruling was clearly against the preponderance of the evidence. *Cook* v. *State*, 293 Ark. 103, 732 S.W.2d 462 (1987). Additionally, the trial judge has discretion in deciding evidentiary issues and his decision will not be reversed on appeal unless he has abused his discretion. *Hoback* v. *State*, 286 Ark. 153, 689 S.W.2d 569 (1985). Based upon our independent determination, the total circumstances reveal that the officers lawfully seized appellant's vehicle as a permissible object of seizure after viewing it with his consent. Upon inspection of the vehicle, the police had a reasonable belief that it was evidence of the commission of a crime. Since the initial seizure was legal and since the reason for and nature of the custody of the vehicle was to use it as evidence, the subsequent warrantless searches were not unconstitutional. From the facts stated and the cases listed above, we find no error in the trial court's denial of the motion to suppress nor do we find that the trial court abused its discretion in allowing in evidence obtained

from the search and seizure of appellant's vehicle. Therefore, the case must be affirmed.

Affirmed.

COOPER and MAYFIELD, JJ., agree.

JENNINGS, J., not participating on rehearing.