**Vance Benton ROLLINS, Jr., Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–265.**

Supreme Court of Arkansas.

Oct. 8, 2009.

Lassiter & Couch, by: Jack T. Lassiter and Erin Cassinelli Couch, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: LeaAnn J. Irvin, Ass't Att'y Gen., for appellee.

ELANA CUNNINGHAM WILLS, Justice.

Appellant Vance Rollins was charged with two counts of manslaughter after he caused a head-on car collision that killed Lawrence and Nina Humphrey. He was tried by a Perry County jury on October

24, 2007, and was sentenced to two consecutive four-year terms of imprisonment. Rollins appealed to the court of appeals, contending that there was insufficient evidence to support his manslaughter convictions. The court of appeals agreed, affirming his convictions but modifying the judgment to reflect the lesser-included offense of negligent homicide. *Rollins v. State*, 2009 Ark.App. 110, 302 S.W.3d 617. The State petitioned for review from the court of appeals' opinion, arguing that it was decided contrary to this court's prior decisions and involved an issue of substantial public interest that requires clarification.

When we grant review of a decision by the court of appeals, we review the case as though the appeal was originally filed in this court. *See Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008); *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007).

In his first argument for reversal, Rollins argues that the trial court erred in denying his motion for directed verdict because the evidence was insufficient to sustain the manslaughter conviction. On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *See Johnson v. State*, 375 Ark. 462, 291 S.W.3d 581 (2009). We will affirm the circuit court's denial of a motion for directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's verdict. *Id.* This court has repeatedly defined substantial evidence as evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Hoyle v. State*, 371 Ark. 495, 501, 268 S.W.3d 313, 318 (2007). In reviewing the sufficiency of the evidence, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the State, without weighing it against conflicting evidence that may be favorable to the appellant, and affirm the verdict if it is supported by substantial evidence. *Wetherington v. State*, 319 Ark. 37, 889 S.W.2d 34 (1994).

As noted above, Rollins contends that the evidence introduced at trial was insufficient to support his manslaughter conviction. More specifically, he contends that the evidence was insufficient to demonstrate that he acted recklessly. Rollins was charged under Arkansas Code Annotated section 5–10–104(a)(3) (Repl.2006), which states that a person commits manslaughter if the "person recklessly causes the death of another person." "Recklessly" is defined in Arkansas Code Annotated section 5–2–202(3) (Repl.2006) as follows:

(A) A person acts recklessly with respect to attendant circumstances or a result of his or her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.

(B) The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation[.]

At trial, the State introduced the testimony of O.J. and Barbara Williams. Mr. Williams testified that, on the day of the accident, he was driving southbound on Highway 7 towards Hot Springs when a vehicle came up behind him. Mr. Williams decided to let the vehicle pass him, so he slowed down and pulled over to the edge of his lane. The vehicle did not pass, and Mr. Williams resumed his speed. The vehicle, however, "just kept coming up behind" Mr. Williams, which made him nervous. Mr. Williams attempted several times over the course of about fifteen miles to slow down to let the other vehicle pass, but it never did. Mr. Williams said he never observed the vehicle cross the center

line, but the tailgating nonetheless made him nervous.

Finally, Mr. Williams pulled into a CCC camp and stopped for a while. After a few minutes, during which several other vehicles went down the road, he returned to the highway and resumed his journey. About five miles down the road, he saw that the vehicle that had been following him had been in a wreck. That vehicle was completely on the opposite side of the center lane, he said.

Barbara Williams described the vehicle behind them as "driving erratically." She said that the vehicle would repeatedly "come way up on our bumper, and then would back off." Mrs. Williams said that the other vehicle was "not fast," but would pull up close behind them and then back away without passing. She also described how they eventually pulled off the road at a CCC camp for five minutes or so and then, when they got back on the highway, they came upon the wreck. Mrs. Williams testified that the vehicle that had been following them was "obviously in the wrong lane."

The State's next witness was Linda Brewer, a nurse who witnessed the accident. Brewer said that she and her daughter had spent the day in Hot Springs and were driving north on Highway 7 at around 3:00 p.m. behind a tan car. As they started down a little grade, she saw a red sport-utility vehicle driving in their lane. At first, she thought it would swerve back, but then she saw the taillights of the tan car just before the SUV hit it. She saw a flash of flame, pulled up alongside the tan car and then, concerned about the fire, quickly accelerated past the wreck. She then pulled over and told her daughter to call 911.

Brewer ran first to the red SUV and tried to open the door but could not. She saw the driver moving around and told him to stay still. She then went to the tan car and tried to help its passengers, the Humphreys; however, they were badly injured, and both expired at the scene of the wreck. As she attempted to assist the Humphreys, she saw the driver of the red SUV, Rollins, trying to get out of his vehicle, so she ran back to help him. She told him that he had been in an accident and needed to sit still, but he got out and kept trying to open the back door of the SUV. Brewer heard him say "Molly," and she realized that there was someone else in the vehicle. After they managed to get the door open, Brewer saw a woman on the floorboards of the back seat. Brewer and her daughter helped the woman out of the vehicle. Rollins then began feeling around on the floorboard, and Brewer thought that perhaps he needed oxygen.

By that time, emergency vehicles had arrived, and Brewer went to speak with the emergency personnel. As she was doing so, she saw Rollins at the side of the road and thought he looked like he was going to pass out. She went to him and told him he needed to sit down; she also asked if he was hurt. He said that he was not, and as she looked at his hands, she saw him drop some green pills. Brewer said that, as a nurse, she thought they might be heart pills, so she asked whether he had any conditions that required medication. He shook his head, and she eventually got him to sit down. A moment or two later, however, he began struggling to get up, and Brewer again tried to get him to sit still. At that point, the woman who had been in the backseat of the SUV began hollering, and Rollins rolled over to try to get up. When he did, Brewer saw green pills underneath him, and she picked up three or four of them and later gave them to police.

Faith Miller, Brewer's daughter, also witnessed the collision. As they came

around a curve on the highway, she saw Rollins's red SUV "all the way" in their lane and also observed Rollins looking over his right shoulder. She said that Rollins was going fast around a curve and "never appeared to slow down, he didn't dodge, he didn't swerve." After the accident, Miller said that her mother went to help Rollins, who "was shaky and wobbly" and appeared to be "in shock and stuff."

Trooper Greg McNeese of the Arkansas State Police, who responded to the scene of the accident at 5:45 p.m., testified that an officer from the Perry County Sheriff's Office |6handed him the pills that Brewer had picked up; he placed them in an envelope and secured them in his vehicle. McNeese also testified that he found a duffel bag in the front passenger floorboard of the SUV that contained clothes, toiletries, and a black cigarette case with three pipes in it. Christa Hall, a forensic chemist at the Arkansas State Crime Laboratory, testified that the pipes tested positive for cocaine residue. Hall also testified that the green pills were hydrocodone and acetaminophen.

Shawn Wright, a nurse at St. Joseph's Hospital in Hot Springs, testified that he took a blood sample from Rollins on the day of the wreck; the blood-alcohol-report form indicates that the sample was collected at 7:15 p.m. Becky Carlisle, a forensic toxicologist at the Crime Lab, testified that she tested the blood samples that were taken from Rollins after the accident. The samples tested positive for cocaine and sertraline, or Zoloft, but the level of both drugs was less than .05 micrograms per milliliter, which indicated that the person had ingested the drugs, but it was a fairly low amount.[1] She said that she did not know how or when the drugs were ingested, and she could not ascertain how long either drug had been in the blood prior to the samples' being taken. When asked whether there was a period of time at which blood tests would no longer detect the ingestion of cocaine, Carlisle said it would be "over eight hours." Her testing revealed no other controlled substances in Rollins's blood sample, including hydrocodone. On cross-examination, Carlisle said that she could not |7give an opinion as to whether the person was impaired by the level of "whatever substances were to the degree that would interfere with normal functioning."

At the conclusion of the State's case, Rollins moved for a directed verdict on the manslaughter charges, arguing that the State had failed to prove the element of recklessness. The circuit court denied his motion, but it did agree to instruct the jury on the lesser-included charge of negligent homicide.[2] As noted above, the jury convicted Rollins on two counts of manslaughter and sentenced him to two consecutive four-year sentences.

■ Viewing all this evidence in the light most favorable to the State, and considering only the evidence that supports the verdict, we conclude that the circuit

---

1. Carlisle testified that the blood tests she used had a lower limit at which the tests were able to detect substances in the blood; .05 was "the lower limit, [and] that's why it's reported less than .05."

2. The court instructed the jury that, to find Rollins guilty of negligent homicide, the State had to prove that he negligently caused the deaths of the Humphreys. This instruction stems from Arkansas Code Annotated section

5-10-105(b)(1) (Repl.2006), which makes negligent homicide a Class A misdemeanor. It differs from Arkansas Code Annotated section 5-10-105(a)(1)(A) (Repl.2006), which provides that a person commits negligent homicide if he negligently causes the death of another as a result of operating a vehicle while intoxicated. Negligent homicide under section 5-10-105(a)(1) is a Class C felony.

court did not err in denying Rollins's motion for directed verdict. At issue in this appeal is whether the State proved that Rollins acted recklessly. As set out above, our statute declares that one acts recklessly "with respect to attendant circumstances or a result of his conduct when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Ark.Code Ann. § 5–2–202(3). The original commentary to the manslaughter statute, section 5–10–105, notes that the test for differentiating between reckless and negligent conduct is "whether the actor perceived the substantial risk of death or serious physical injury and disregarded it (reckless conduct) or failed to perceive the risk in the first place (negligent conduct)." Original Commentary to Ark.Code Ann. § 5–10–105 (Repl.1995).

In *Hoyle v. State*, 371 Ark. 495, 268 S.W.3d 313 (2008), this court considered a challenge to the sufficiency of the evidence in a manslaughter case with facts that are somewhat similar to the instant case. In *Hoyle*, the defendant was driving a tractor-trailer with a loaded chip hauler attached to it. Hoyle crossed the center line and struck an oncoming vehicle, killing two of its three occupants. The officers who responded to the accident scene suspected that Hoyle had been driving under the influence of drugs, and they took him to a hospital to obtain blood and urine samples. Those samples later revealed the presence of methamphetamine in Hoyle's system. Hoyle was subsequently charged and convicted of two counts of manslaughter. *Hoyle*, 371 Ark. at 497, 268 S.W.3d at 315.

On appeal, Hoyle argued that there was insufficient proof that he had acted recklessly. *Id.* at 503, 268 S.W.3d at 319. This court phrased the relevant inquiry as "whether the evidence ... demonstrated that Hoyle consciously disregarded a sub-

stantial and unjustifiable risk in driving while under the influence of methamphetamine." *Id.* The proof introduced at trial showed that Hoyle's vehicle, which was traveling southbound, crossed the center line and struck the vehicle driven by the victims at a forty-five degree angle. The driver of the truck who had been behind Hoyle said he never saw Hoyle apply his brakes prior to the accident and had earlier witnessed Hoyle almost run a tanker truck off the road. *Id.* at 498, 268 S.W.3d at 315. Another eyewitness said he never saw anything that would have caused Hoyle's vehicle to swerve into oncoming traffic. *Id.* at 500, 268 S.W.3d at 317.

In *Hoyle*, the State also offered the testimony of a board certified pathologist, Dr. Pappas, who stated that the presence of methamphetamine in the blood could cause agitation, irrational behavior, signs of psychosis, fatigue, and signs of paranoia; Dr. Pappas also opined that a person driving a vehicle under the influence of methamphetamine might drift in and out of a lane, exhibit risky behavior, or drive off the road. *Id.* at 499, 268 S.W.3d at 316. Another witness testified that Hoyle had a concentration of .221 micrograms of methamphetamine per milliliter in his blood, and Dr. Pappas stated that this concentration of the drug demonstrated that, at the time of the accident, Hoyle "was either coming up, going up, or he was certainly under the effect" of methamphetamine. *Id.* at 501, 268 S.W.3d at 317. This level of the drug in Hoyle's blood "without a doubt had a negative effect on [Hoyle's] driving." *Id.*

Given this proof, this court determined that there was substantial evidence that Hoyle had recklessly caused the deaths of the victims, stating that it did not agree that the jury would have had to resort to speculation and conjecture to conclude that the drugs in Hoyle's system "so altered his

motor skills that it was the cause of the wreck." *Id.* at 504, 268 S.W.3d at 319. The court concluded that Hoyle "consciously disregarded a substantial and unjustifiable risk that death might occur if he operated a commercial vehicle after ingesting methamphetamine, and the disregard thereof constituted a gross deviation from the standard of care that a reasonable person would observe in Hoyle's situation." *Id.*

Similarly, in *Smith v. State,* 3 Ark.App. 224, 623 S.W.2d 862 (1981), the court of appeals upheld a manslaughter conviction where the proof showed that the defendant acted recklessly. In *Smith,* as in the instant case, the appellant argued that she was, at most, guilty of negligent homicide. The court of appeals rejected her argument, though, pointing out that Smith had been drinking and was speeding when she hit a curve and lost control of her car. She hit a pedestrian and then drove into a ditch, whereupon she became hysterical because she had wrecked her mother's car. Afterward, she refused to return to the scene of the accident. *Smith,* 3 Ark.App. at 227, 623 S.W.2d at 863. The court of appeals held as follows:

> We believe the evidence is without doubt substantial that appellant's conduct was reckless and exhibited a conscious disregard of a perceived risk. In sum, appellant was drinking to excess during midday and was driving a vehicle at high speeds on public streets and highways in a metropolitan area. This evidence alone clearly supports that appellant's actions exhibited a conscious disregard of people's lives and property.

Appellant's actions subsequent to her striking the victim served to substantiate a knowledgeable but callous lack of concern for life when she rejected her passenger's request to return to the scene to determine whether she had run anyone down. Appellant's sole expressed concern after leaving the scene was to get her car fixed. Based on these facts, we see no reason to distinguish this case from the case of *Kirkendall v. State,* 265 Ark. 853, 581 S.W.2d 341 (1979), wherein the court affirmed a conviction of manslaughter on similar facts.

*Id.* at 228, 623 S.W.2d at 864.

In the present case, as in *Hoyle* and *Smith,* we conclude that the evidence supported the trial court's denial of Rollins's motion for directed verdict. Rollins argues that there was no testimony that the drugs in his blood would affect his ability to drive a vehicle, and thus there was no evidence that he had any knowledge of any risk. While no evidence was presented of Rollins's level of impairment or intoxication from ingesting cocaine, we note that such evidence is not necessary to sustain a conviction for reckless manslaughter.[3] Rather, the State needed only to prove that Rollins recklessly caused the death of another person. That is, the State was required to prove that Rollins consciously disregarded a substantial and unjustifiable risk of causing death, and that such risk was of a nature and degree that disregard of it constituted a gross deviation from the standard of care that a reasonable person would observe in the

---

**3.** Compare the offense of felony negligent homicide, which requires proof that the defendant caused the death of another person as a result of operating a vehicle while intoxicated. Ark.Code Ann. § 5–10–105(a)(1)(A). *See also Robinson v. State,* 98 Ark.App. 237, 254 S.W.3d 750 (2007) (defendant was convicted of felony negligent homicide, but the court of appeals reduced the conviction to negligent homicide, holding that evidence of merely ingesting a controlled substance, without further proof of actual intoxication or impairment, was not sufficient to prove the necessary element of intoxication).

actor's situation. *See* Ark.Code Ann. § 5–2–202(3)(A)–(B).

■ Although Rollins argues that there was no proof that he consciously disregarded a risk, this court has repeatedly noted that intent is rarely provable by direct evidence. *See Watson v. State*, 358 Ark. 212, 188 S.W.3d 921 (2004); *Price v. State*, 347 Ark. 708, 66 S.W.3d 653 (2002). Since intent ordinarily cannot be proven by direct evidence, jurors are allowed to draw upon their common knowledge and experience to infer it from the circumstances. *Tarentino v. State*, 302 Ark. 55, 786 S.W.2d 584 (1990). Here, there was evidence that Rollins had been driving erratically prior to the crash that occurred around 3:00 p.m., tailgating the Williamses for fifteen miles, driving fast on a curving highway, and crossing over the center line while looking over his shoulder. There was further testimony that he did not attempt to stop or swerve as he drove head-first into the Humphreys' vehicle. Moreover, proof was presented from which the jury could infer that, at some point within the eight hours preceding the drawing of his blood at 7:15 p.m., Rollins had ingested cocaine. Taking all of these facts and circumstances together and viewing them in the light most favorable to the State, as we are required to do under our standard of review, we cannot agree that the circuit court erred in denying Rollins's motion for directed verdict.[4]

Rollins raises a second point on appeal, contending that the circuit court abused its discretion in denying his motion in limine in which he sought to exclude evidence of the hydrocodone pills and "smoking devices" found in Rollins's car and evidence of his use of cocaine. At a pretrial hearing, Rollins argued that the evidence was irrelevant because he was not charged with being under the influence of anything; the State countered that the evidence was relevant because it had charged Rollins with acting recklessly and was not precluded from showing that Rollins may have been affected by an illegal substance. The court denied the motion in limine, and the State introduced the pills and the smoking devices.

---

4. The dissent appears to conclude that the only evidence presented to the jury was that Rollins looked over his shoulder, and the dissent questions whether the State introduced proof that Rollins consciously made the decision to do so. This assertion ignores our longstanding principles that intent is rarely provable by direct evidence and that jurors may infer intent from the circumstances. Here, the attendant circumstances—which go largely unmentioned by the dissent—showed that Rollins had been driving erratically, was going fast, failed to slow down or swerve as he came upon the Humphreys' vehicle, and had cocaine in his bloodstream that the jury could have inferred had been ingested within the hours prior to the crash. As noted above, we are unwilling to conclude that a jury could not draw an inference of reckless conduct from these circumstances.

Moreover, the cases on which the dissent relies are not persuasive. For example, the only issue presented in *Prunty v. State*, 271 Ark. 77, 607 S.W.2d 374 (1980), was the admissibility of photographs. In *Booth v. State*, 26 Ark.App. 115, 761 S.W.2d 607 (1989), the primary question was whether circumstantial evidence proved that Booth was driving the vehicle that killed two people in a hit-and-run accident. The court in *Clark v. State*, 15 Ark. App. 393, 695 S.W.2d 396 (1985), merely stated in a conclusory fashion at the end of the opinion that the evidence proved that the defendant had acted recklessly. Finally, in *McGill v. State*, 60 Ark.App. 246, 962 S.W.2d 382 (1998), evidence of "fishtailing" a car constituted evidence of reckless behavior. While the dissent claims that McGill's decision to fishtail was a conscious decision that caused an accident, it fails to explain, in the present case, how the act of looking away from the road, when coupled with the other attendant circumstances, could not also have been evidence from which the jury could conclude that Rollins acted recklessly.

On appeal, Rollins argues that the evidence of his use of controlled substances was irrelevant because it did not tend to make any fact at issue more or less probable. He contends that evidence that he had hydrocodone pills and pipes in his possession did not shed any light on whether taking cocaine or prescription medication would affect a person's ability to operate a vehicle, whether those substances actually had any effect on his ability to operate a vehicle or would affect anyone in a similar situation, or whether he realized that there was any potential risk in possessing or ingesting these substances and then consciously disregarded it. Rather, he urges that this evidence was simply intended to portray him in a bad light in the jury's eyes.

■ Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401. Evidentiary matters regarding the admissibility of evidence are left to the sound discretion of the trial court. *Williams v. State*, 374 Ark. 282, 287 S.W.3d 559 (2008); *Grant v. State*, 357 Ark. 91, 161 S.W.3d 785 (2004). A trial judge's ruling in this regard will not be reversed absent an abuse of discretion. *Williams, supra.* This high threshold does not simply require error in the trial court's decision but rather that the trial court act improvidently, thoughtlessly, or without due consideration. *Id.*

■ Here, the evidence of the pipes with cocaine residue was relevant, given the State's theory of the case. They were relevant in the sense that they made it more probable than not that Rollins had ingested cocaine at some time prior to the accident.[5] Therefore, we cannot say that the trial court abused its discretion in admitting them.

Affirmed; court of appeals reversed.

HANNAH, C.J., dissents.

JIM HANNAH, Chief Justice, dissenting.

I respectfully dissent. The State prosecuted Rollins for manslaughter, argued his conduct was reckless, and then offered evidence to prove that Rollins was negligent. The jury verdict of two convictions for manslaughter is unsupported by substantial evidence, and the circuit court erred in submitting the issue of manslaughter to the jury. The jury was left to speculation and conjecture.[1] The evidence does support the lesser-included offense of negligent homicide. Accordingly, I would affirm the judgment of the court of appeals, modify the judgment to two convictions for negligent homicide, and

---

5. Rollins also argues that the introduction of the hydrocodone pills was irrelevant because, if he "did not ingest the hydrocodone, the fact of his possessing it had no probative value unless he knew possessing it would and in fact did affect his ability to drive." However, Rollins appears to have failed to advance this particular contention in his arguments before the trial court; therefore, we do not reach it on appeal. *See Davis v. State*, 368 Ark. 401, 246 S.W.3d 862 (2007) (where a particular argument was not raised below, it was not preserved for appellate review).

1. The majority takes exception to the dissent stating that there is a failure to explain how all the evidence offered "could not have been evidence from which the jury could conclude that Rollins acted recklessly." This misses the point. The judge failed to act as gatekeeper and allowed the jury to decide the question of whether Rollins was reckless when there was a lack of substantial evidence from which the jury could draw that conclusion. The circuit court erred in instructing the jury on manslaughter. The jury was left to speculation and conjecture.

sentence Rollins to the maximum allowed on both convictions.

The evidence the State offered was that Rollins was driving too fast and looked over his right shoulder about the time he approached a curve. The State also showed that through his inattention in looking back, Rollins crossed the double yellow line, veered into the lane of oncoming traffic, and struck the victims' car. This all constitutes evidence of negligence. However, the State's strategy at trial was to argue that the evidence of negligent conduct could satisfy the requirements of reckless conduct. This is apparent from the State's argument despite the State peppering its argument with the word "consciously." The State argued that Rollins "consciously disregarded the rules of the road" when he failed to make himself conscious of the conditions of the road in that he looked over his shoulder instead of keeping his eye on the road. According to the State, this caused him to cross a double yellow line in the curve and drive "entirely" on the wrong side of the road. Although the State couched its argument in terms of "conscious disregard," nothing offered showed that Rollins consciously decided to look away from the road, consciously decided to drive in the wrong lane on a curve, and consciously decided to remain in that wrong lane. The State in summary argued that Rollins consciously disregarded a perceived risk when he failed to abide by "basic driver safety" and when he failed to "be aware of the conditions" under which he was driving. According to the State, "all he had to do was stay on his side of the road," and in failing to do so, he was reckless. Thus, while characterizing the conduct as reckless, the State actually argues that Rollins was criminally negligent, that he should have been aware of the attendant circumstances, that he should have been aware of a substantial and unjustifiable risk, and

that his failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe. *See* Ark.Code Ann. § 5–2–202 (Repl.2006). The State even argued that Rollins violated his "standard of care," which again reveals the State was arguing negligence. The evidence the State offered showed that Rollins exercised very poor judgment in taking his eyes from the road. That is negligence, either civil, or criminal, if the burden of proof can be met. There is no support in the evidence to show that Rollins consciously disregarded a substantial and unjustifiable risk with the knowledge of probable harmful consequences of a wrongful act, or that his conduct was a willful and deliberate failure to act to avoid the consequences. These are the requirements to prove reckless conduct. *See* Ark.Code Ann. § 5–2–202 (Repl.2006).

The State further argued Rollins might have been impaired by the drugs, but admitted it "did not know how that might affect you." Rollins's blood test showed that Rollins was not intoxicated, and the State chose not to put on an expert to testify about whether the level of cocaine in Rollins's blood could have impaired his driving. As the court of appeals concluded, on this record, the issue of driving under the influence was a closed question. *Rollins v. State,* 2009 Ark.App. 110, 302 S.W.3d 617, 619. The State chose not to pursue the question.

The accident and death of the elderly victims was horribly tragic. However, despite the tragedy, at best, the evidence the State offered shows that Rollins unintentionally veered into oncoming traffic when he failed to watch the road. There is no evidence that he consciously drove on the wrong side of the road. There is no evidence of a conscious disregard of a perceived risk. I do note the testimony by

Mr. and Mrs. Williams. Both testified that Rollins was driving erratically, in that he tailgated them for about fifteen miles prior to Williams pulling over to force Rollins to go by. While tailgating is hardly safe or appropriate behavior, it casts little if any light on whether Rollins consciously crossed the double yellow line, consciously drove in the oncoming lane on a curve, and consciously decided to remain in the wrong lane.

The majority errs in relying on *Hoyle v. State*, 371 Ark. 495, 268 S.W.3d 313 (2008), because Holye was intoxicated. He was driving an eighteen-wheeler. Prior to the accident causing a death, Hoyle almost ran a truck off the road. Expert testimony at trial showed that Hoyle had .221 micrograms methamphetamine per milliliter that without doubt affected his driving. *Hoyle*, 371 Ark. at 501, 268 S.W.3d at 319.

Other appeals from cases discussing criminally reckless conduct involve conscious conduct similar to *Hoyle*. In *Prunty v. State*, 271 Ark. 77, 607 S.W.2d 374 (1980) (manslaughter conviction), the appellant was drunk. He was observed driving erratically by weaving, passing cars in no-passing zones, and running cars off the road. In a chase with police, appellant exceeded 100 miles per hour. In a curve, appellant was in the wrong lane and struck an oncoming car. A person in that car died. In *McGill v. State*, 60 Ark.App. 246, 962 S.W.2d 382 (1998) (delinquency finding based on reckless conduct; criminal mischief in the first degree), McGill fishtailed the car as he drove around a corner so that he lost control of the car in the conscious disregard of the risk of a wreck, leading to the accident. The decision to fishtail was a conscious decision, leading to the accident. In *Booth v. State*, 26 Ark. App. 115, 761 S.W.2d 607 (1989) (manslaughter conviction), appellant was driving an eighteen-wheeler. Again, the appellant chose to drive while intoxicated. He began drinking in a bar in the mid-afternoon, and he became so intoxicated that the management of the bar refused to sell him any more alcohol. That evening, he went to another bar, and upon his return to the former bar an hour and one-half later, he was more intoxicated than before. He remained at the bar until it closed and then started off, despite being offered a place to stay and being asked not to drive. He struck another car and killed a person. In *Clark v. State*, 15 Ark.App. 393, 695 S.W.2d 396 (1985) (manslaughter conviction), appellant and his drinking buddy got so drunk that appellant passed out. Upon waking up, appellant thought there was an intruder in his yard. He retrieved a pistol and shot and killed his drinking buddy. In *Smith v. State*, 3 Ark.App. 224, 623 S.W.2d 862 (1981) (manslaughter conviction), appellant was drunk and driving. She was speeding, lost control in a curve, accelerated to scare her passenger, and hit a bump or pothole that made her lose control of the car. In the process, appellant hit and killed a pedestrian.

In each of the above-cited cases, there was conscious conduct. In *McGill*, the minor consciously chose to fishtail the car. The remaining cases involve manslaughter convictions, and in each there was a conscious decision to drink and drive. None of these cases are comparable to Rollins, who the State proved looked away from the road coming into a curve, veered into oncoming traffic, and hit the victims' car, killing them both. No proof was offered to show that Rollins's conduct was anything other than negligent. We have no idea why Rollins looked back. He veered off into the oncoming traffic just before the accident occurred. Had he been driving in the wrong lane over some distance, the argument that his conduct was a conscious disregard would be more convincing. The natural inference from the facts is that

Rollins looked back and did not realize he was slipping into the wrong lane. The conduct is hardly laudable, but the evidence offered rises only to negligence of some form. The State failed in proving Rollins consciously disregarded a substantial and unjustifiable risk that the attendant result would occur.

This court should rely on *Hunter v. State,* 341 Ark. 665, 19 S.W.3d 607 (2000). Hunter was not intoxicated and caused the death of three people in a head-on collision while in the wrong lane. In *Hunter,* this court affirmed a conviction for negligent homicide where Hunter knew the road, knew the double yellow line meant he was not allowed to pass, knew his vision was obscured by mist and spray from rain, and yet decided to pass on a hill where he knew it was unsafe. He collided with a car that came over the crest of the hill and killed three people. The court affirmed the denial of the directed-verdict motion, holding that the proof supported the allegation of a gross deviation from the standard of care that a reasonable person would observe in the situation. *Hunter,* 341 Ark. at 669, 19 S.W.3d at 610 (quoting Ark.Code Ann. § 5–2–202(4) (Repl.1997)). The court stated as follows on the issue of negligent and reckless conduct:

> In the commentary to the above section, it is noted that negligent conduct is distinguished from reckless conduct primarily in that it does not involve the conscious disregard of a perceived risk. In order to be held to have acted negligently under § 5–10–105, it is not necessary that the actor be fully aware of a perceived risk and recklessly disregard it. It requires only a finding that under the circumstances he should have been aware of it and his failure to perceive it was a gross deviation from the care a reasonable, prudent person would exercise under those circumstances.

*Hunter,* 341 Ark. at 668, 19 S.W.3d at 609 (citing *Phillips v. State,* 6 Ark.App. 380, 382, 644 S.W.2d 288, 289 (1982)). The conduct in *Hunter* is far more intentional than what the proof shows in the present case, and that conduct was held to be criminally negligent. The majority rewrites the statute and judicially creates criminal liability for manslaughter contrary to the elements of the crime set out in the statutes enacted by the General Assembly.

While it is clear to me that the State failed to provide substantial evidence to support the jury's decision on manslaughter, it is also clear that the State provided substantial evidence to prove the lesser-included offense of negligent homicide. I agree with the court of appeals that pursuant to *Dixon v. State,* 260 Ark. 857, 545 S.W.2d 606 (1977), we should modify the judgments of conviction to the lesser-included offenses of negligent homicide under Arkansas Code Annotated section 5–10–105(b)(1) (Repl.2006) and set the sentence at the maximum allowed by law for negligent homicide.